**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anderson Jeff GOLIDAY, Defendant-
Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Julia Ann LACEFIELD, Defendant-
Appellant.**

**Nos. 72–1445, 72–1446.**

United States Court of Appeals,
Ninth Circuit.

Oct. 18, 1972.

Matthew N. Lees (argued), Benjamin F. Rayborn, John J. Cleary, of Federal Defenders of San Diego, Frederic L. Link, of Goldberg & Link, San Diego, Cal., for defendants-appellants.

James W. Meyers, Asst. U. S. Atty. (argued), Catherine A. Chandler, Stephen G. Nelson, Asst. U. S. Attys., Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before DUNIWAY and WRIGHT, Circuit Judges, and PREGERSON, District Judge.*

PER CURIAM:

Goliday and Lacefield were jointly tried and convicted, under two counts of an indictment charging them with conspiracy to import heroin (21 U.S.C. § 963) and importing heroin (21 U.S.C. §§ 952, 960 and 963). Each appeals.

■ In No. 72–1446, Lacefield argues that the evidence is insufficient to sustain the verdict. We have examined it carefully, and we agree.

■ In No. 72–1445, Goliday makes the same argument. In his case, however, we find the evidence sufficient.

■ Goliday argues that he was improperly cross-examined by Lacefield's counsel about his prior convictions. The cross-examination was proper.

■ Goliday's most serious contention is that misconduct of a juror requires a reversal. After the case had been submitted to the jury, the members were permitted to separate for the weekend. When they reassembled, one juror revealed that she had discussed the case at home. This was later reported to the trial judge, who held a hearing to determine what had happened. The government produced a number of jurors to testify. The juror in question testified that all that she did was put one hypothetical question to her son.[1] The other jurors were very vague about what their fellow juror told them that she had done, but they were unanimous in testifying that it did not affect their verdict. Some said that various of the jurors criticized her for what she had done.

The government recognizes that it has a heavy burden to show that what happened did not prejudice the defendant.

---

* Honorable Harry Pregerson, United States District Judge, Central District of California, sitting by designation.

1. "A. Well, I'm a little embarrassed to say this, but not being familiar with the law, I was rather in doubt about what circumstantial evidence meant.
"Q. You had been given the Court's instructions as to the law——
"A. Oh, yes.
"Q. ——Friday afternoon?
"A. Yes, this is true, this is true. However, I still had a question in my mind, and I was at home and I reiterated to my son—nothing about the case; I know that this is forbidden, and I did not say anything about the case. I said to him, 'I've been given a definition of circumstantial evidence by the Judge,' and I said, 'I'm a little bit in doubt about it.' . . .
.  .  .  .  .  .
"A. . . . I told him, 'Now Honey, I'm not supposed to talk about the case, and I'm not going to,' . . .

"And I said, 'As an example, we had been told, "If you look out your window and you see rabbit tracks across the snow, you know that a rabbit has crossed even though you haven't seen him and this is circumstantial evidence." '
"But then I said, 'Gee whiz, if you look in the bush and you see two rabbits, how do you know which one made the tracks?'
"That is the extent of what I said, and he says, 'Mom, I don't know,' . . .
.  .  .  .  .
"Q. Now did you discuss any other aspects of the case—of the instructions that were given to you or the facts of the case—with any other person other than the one you've related?
"A. No, absolutely not.
"Q. Did you tell your son on this occasion anything about the facts of the case as you had heard them from the witnesses who testified in the case?
"A. No, because I knew I was not supposed to. I was only interested in the circumstantial—the definition of circumstantial evidence."

Remmer v. United States, 1954, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654. It argues that it met that burden here. We have examined the testimony taken at the hearing and we agree.

The trial judge saw and heard the witnesses, including the juror in question. He was in a better position than we are to determine whether what happened was prejudicial.

In No. 72–1446, the judgment is reversed with directions to dismiss the charges as to Lacefield.

In No. 72–1445, the judgment is affirmed.