[No. 7328–5–II. Division Three. July 8, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. JEANNETTE KATHERINE MURPHY, *Appellant*.

*John Henry Browne* and *Browne, Ressler & Foster*, for appellant.

*Patrick D. Sutherland, Prosecuting Attorney*, and *Philip L. Harju, Deputy*, for respondent.

MUNSON, J.*—Jeannette K. Murphy appeals her convictions of two counts of first degree murder and one count of first degree arson. She contends: (1) her unrecorded, post-arrest statements to law enforcement officers should have been excluded; (2) several statements made to third parties both before and after her parents' deaths should have been excluded; and (3) judgment and sentence should have been vacated because of jury misconduct discovered after the trial. We affirm.

The sufficiency of the evidence sustaining the conviction, other than noted above, is not challenged. We discuss only

---

*This appeal was heard by a panel of Division Three judges sitting in Division Two.

those facts necessary to resolve the assignments of error.

On April 22, 1983, Miss Murphy's parents were shot and killed and their home burned. An information charging her with arson was filed on May 16 and an arrest warrant issued. Two detectives of the Thurston County Sheriff's Department journeyed to Portland, Oregon, where, in the company of a Portland detective, Miss Murphy was arrested.

Prior to that arrest, an attorney, retained on her behalf by her grandmother, had sent a letter to the Thurston County Sheriff's Department and the county prosecutor's office advising them of his representation. He also requested they not speak to Miss Murphy or allow her to be questioned unless an attorney from his office was present. At the time of arrest, Miss Murphy was read her *Miranda* rights by the Portland detective and subsequently by the detectives from the Thurston County Sheriff's Department. She was also fully informed an attorney had been retained by her grandmother to represent her, who had instructed them not to question her in his absence. Miss Murphy stated there was no need for him to be present during the interrogation; she would speak with them and signed a waiver form. Thereafter, Miss Murphy related facts surrounding her alleged discovery of her parents' bodies, the location of a gun, the area where she poured gasoline, and how and why she set the fire.

During the questioning, one of the detectives telephoned his superior in Olympia and was advised to tape–record the interrogation. When he returned to the interrogation room, he so advised Miss Murphy and she consented to the tape recording. Thereafter, she asked if he had talked with the attorney because she had heard the detective use his name when he was on the telephone. Following a colloquy between the two, the conversation culminated in the detective calling the attorney on Miss Murphy's behalf and she spoke with him. Thereafter, the interrogation ended. Miss Murphy now seeks to have us adopt a rule that "Once an attorney enters the proceeding, the police may not question

the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant's right to counsel" as held in *People v. Arthur,* 22 N.Y.2d 325, 329, 239 N.E.2d 537, 539, 292 N.Y.S.2d 663 (1968). *See also People v. Hobson,* 39 N.Y.2d 479, 348 N.E.2d 894, 384 N.Y.S.2d 419 (1976). During oral argument, counsel waived this assignment of error; nevertheless, we do address it.

■ Such a rule is not required by the federal constitution. In *Moran v. Burbine,* ___ U.S. ___, 89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986), the Supreme Court held the Fifth Amendment does not require police to advise a suspect of the availability of retained counsel before obtaining a knowing and intelligent waiver of the right to counsel. *Michigan v. Jackson,* ___ U.S. ___, 89 L. Ed. 2d 631, 106 S. Ct. 1404 (1986) supports the proposition that police are not prohibited under the Sixth Amendment from initiating conversations with the accused in the absence of counsel, if the defendant has not previously invoked that right, is given warnings as set forth in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966) and its progeny, and makes a valid waiver of constitutional rights as required by *Johnson v. Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938).

Nor does article 1, section 22 (amendment 10) of our constitution require such a rule. *State v. Vidal,* 82 Wn.2d 74, 508 P.2d 158 (1973); *see also State v. Nicholson,* 77 Wn.2d 415, 463 P.2d 633 (1969). We adopt the reasoning of *State v. Haynes,* 288 Or. 59, 71–74, 602 P.2d 272, 278–79 (1979), wherein that court stated:

> But the law does not impose the [benefits of counsel's efforts to forestall incriminating disclosures] on a defendant who rejects them. They may be waived just as the right to remain silent itself may be waived. There is no law that a person in custody may not speak if he so chooses, and without a lawyer's advice. The crucial point is that it must be a knowing choice as well as voluntary in the sense of not being coerced. . . .
>
> . . . But we agree with the Massachusetts and Penn-

sylvania decisions [*i.e., Commonwealth v. McKenna,* 355 Mass. 313, 244 N.E.2d 560 (1969); *Commonwealth v. Hilliard,* 471 Pa. 318, 370 A.2d 322 (1977)] that when law enforcement officers have failed to admit counsel to a person in custody or to inform the person of the attorney's efforts to reach him, they cannot thereafter rely on defendant's "waiver" for the use of his subsequent uncounseled statements or resulting evidence against him. We believe this rule protects the suspect's right under [our state constitution] and the federal fifth and 14th amendments not to testify against himself, and also that it suffices to satisfy the statement quoted by defendant from *Miranda v. Arizona, supra,* that police interference with consultations between defendant and an attorney "constitutes a violation of the Sixth Amendment right to the assistance of counsel and excludes any statement obtained in its wake." 384 US at 465, n. 35.

(Footnotes and citations omitted.) *See also State v. Jackson,* 303 So. 2d 734 (La. 1974).

*State v. Jones,* 19 Wn. App. 850, 578 P.2d 71 (1978) is distinguishable. There the defendant had not been advised that an attorney had been retained for him and the attorney objected to the police questioning in his absence. Here, Miss Murphy had been given this information. She declined the attorney's request and discussed the case with the detectives. Later she requested the officer to place a call to the attorney and apparently upon his advice, she did cease discussing matters with the officers. They did not pursue it.

We see nothing wrong in the procedure used in obtaining Miss Murphy's unrecorded statements and conclude it passes constitutional muster. The tape–recorded portion of the interrogation was previously suppressed by the trial court.

█ Prior to trial, Miss Murphy moved to exclude certain evidentiary statements made by her on the basis of relevancy and undue prejudice. In one statement she advised an Army recruiter on April 18 that she would be unable to attend a scheduled physical examination on April 22 (the day of her parents' deaths), because she would be attending her grandmother's funeral in California. The

statement was false. The State sought to introduce it because it was relevant to show opportunity and preparation by the accused, urging its probative value outweighed any possibility of undue prejudice. *See* ER 403. Although the court did not give a cautionary instruction as required by *State v. Saltarelli,* 98 Wn.2d 358, 361–62, 655 P.2d 697 (1982), we believe the outcome of the trial would not have been materially affected. *State v. Ferguson,* 100 Wn.2d 131, 667 P.2d 68 (1983); *State v. Tharp,* 96 Wn.2d 591, 599, 637 P.2d 961 (1981). We find no prejudice.

In another statement 5 months prior to her parents' deaths, Miss Murphy told a college roommate there had been threats of violence against her family. This statement was also false. A third statement was made after her parents' deaths, to a former high school friend, to the effect she would not miss her parents because she had hardly seen them before they died. This, too, was apparently false. Miss Murphy urges that although the statements were not offered for the purpose of impeaching her testimony or establishing her bad character, they should have been excluded either as irrelevant or of minimal probative value. The trial court considered the factors noted in *State v. Saltarelli, supra,* when admitting the evidence under ER 404(b). ER 803(a)(3) allows the admission of hearsay evidence to establish the declarant's existing state of mind. The defendant's feelings toward the deceased were relevant, so was the statement to the college roommate. *See* ER 401. We find no error.

After the jury verdict of guilty on two counts of first degree murder and one count of first degree arson, the court entered judgment and sentence. During the pendency of this appeal, Miss Murphy filed a motion to vacate, claiming jury misconduct. In an accompanying affidavit, one juror related a conversation she had had with her daughter while having lunch during a trial recess. Apparently, the daughter had been attending the trial. The mother made some comment about being confused and asked her daughter her opinion of the guilt or innocence of

Miss Murphy. The daughter told her she thought Miss Murphy was guilty. No further discussion occurred. The court ordered a testimonial hearing which supports the fact the conversation occurred. The hearing also established that during deliberations this particular juror voted to acquit, but later (possibly because of pressure from other jurors) changed her vote to guilty although she was not the last juror to do so. It is not contended the conversation between the juror and the daughter was related to any other juror; in fact, the conversation was not disclosed until after the judgment and sentence had been entered. Later the juror felt remorse and contacted defense counsel.

 Communications by or with jurors constitute misconduct. Once established, it gives rise to a presumption of prejudice which the State has the burden of disproving beyond a reasonable doubt. *Remmer v. United States,* 347 U.S. 227, 229, 98 L. Ed. 654, 74 S. Ct. 450 (1954); *State v. Rose,* 43 Wn.2d 553, 557, 262 P.2d 194 (1953). However, this presumption is not conclusive and may be overcome if the trial court determines such misconduct was harmless to the defendant.[1] *State v. Saraceno,* 23 Wn. App. 473, 475, 596 P.2d 297, *review denied,* 92 Wn.2d 1030 (1979); *see also State v. Forsyth,* 13 Wn. App. 133, 136–37, 533 P.2d 847 (1975).

Here, there was no reasonable possibility of prejudice given the fact the single juror expressed her doubts, during deliberations, about the defendant's guilt, and initially voted for acquittal after the misconduct occurred. *See Government of V.I. v. Gereau,* 523 F.2d 140, 154–55 (3d Cir. 1975), *cert. denied,* 424 U.S. 917, 47 L. Ed. 2d 323, 96 S. Ct. 1119 (1976); *accord, State v. Hatley,* 41 Wn. App. 789, 792–95, 706 P.2d 1083, *review denied,* 104 Wn.2d 1024 (1985); *Tate v. Rommel,* 3 Wn. App. 933, 478 P.2d 242 (1970), *review denied,* 78 Wn.2d 997 (1971).

---

[1]Counsel advised at oral argument that the juror had subsequently been found in contempt, sentenced to the county jail and ordered to perform community service, all of which the juror has completed.

While the juror's mental processes obviously inhere in the verdict, it is important to note the prior conversation with the juror's daughter was not discussed during deliberations and the juror originally voted for acquittal. Such information supports the inference there was no reasonable possibility of prejudice and does not inhere in the verdict since it could "be rebutted by other testimony without probing [the] juror's mental processes." *Gardner v. Malone,* 60 Wn.2d 836, 841, 376 P.2d 651, 379 P.2d 982 (1962); *see also Gereau* at 154–55; *accord, Hatley,* at 793.

Here, the trial judge saw and heard the witnesses, including the juror in question; he was in a better position than we to determine whether the misconduct was prejudicial. We do not find any abuse of discretion in denying the motion to vacate. *State v. Crowell,* 92 Wn.2d 143, 145–46, 594 P.2d 905 (1979); *United States v. Goliday,* 468 F.2d 170 (9th Cir. 1972); *see also People v. Dean,* 103 Mich. App. 1, 302 N.W.2d 317, 318–19 (1981).

The convictions are affirmed.

McINTURFF, A.C.J., and THOMPSON, J., concur.

Review denied by Supreme Court October 7, 1986.