249 N.J. Super. 41 (1991)
592 A.2d 4
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN ROBERT REED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1991.
Decided June 17, 1991.
*43 Before Judges PETRELLA, MUIR, Jr. and BROCHIN.
Mordecai Garelick, Assistant Deputy Public Defender, argued the cause for appellant (Wilfredo Caraballo, Public Defender, attorney; Mordecai Garelick, of counsel and on the brief).
Michael J. Williams, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Michael J. Williams, of counsel and on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
A jury found defendant John Reed guilty of having "knowingly cause[d] death or serious bodily injury resulting in death" contrary to N.J.S.A. 2C:11-3a(2) and of aggravated criminal sexual contact contrary to N.J.S.A. 2C:14-3a. For the murder conviction, he was sentenced to life imprisonment with thirty years' parole ineligibility, and for the conviction of criminal sexual contact, to a concurrent term of five years.
*44 From the evidence presented, the jury could have found that some time on Saturday, March 14, 1987, defendant sexually assaulted or attempted to assault his victim, and that he killed her by stabbing her numerous times and fracturing her skull with a flat object.
Defendant's two most substantial grounds of appeal are that his statements to the police were obtained in violation of his constitutional rights and should have been suppressed and that the trial court's charge to the jury on the lesser included crime of passion-provocation manslaughter was erroneous. The defendant also alleges that he was prejudiced by other errors in the trial court's instructions to the jury, by the exclusion of material evidence from the jury, and by misconduct on the part of the prosecutor in his opening and summation.
Defendant's victim was a friend of his. Defendant had met her at work and had introduced her to Francis Varga, the woman with whom he was living. The three of them had gone out to dinner together.
On Monday morning, March 16, 1987, Ms. Varga and defendant telephoned the police from their house and reported that earlier that morning defendant had found the victim[1] slain in her town house. Defendant and Ms. Varga were told to meet the police outside the victim's town house. They were waiting there when a policeman arrived, and defendant related what he claimed had occurred.
According to the defendant, the victim had called him at 11:45 on the previous Friday night and had told him that an intruder was looking through her window and pounding on it. Because of the call, he visited the victim Saturday morning and they arranged to have dinner together that evening. When he arrived at her home to take her to dinner, her television and a *45 light in the hall were on, but no one answered the door bell. On his way to work Monday morning, defendant told the policeman, he went to the victim's house to see that she was all right. The front door was unlocked. He went in and found her lying on the floor dead.
After giving this statement to the police, defendant and Ms. Varga returned home. Some other police officers arrived at their house some time later that morning. After about twenty minutes of questioning, defendant and Ms. Varga were asked to go to the prosecutor's office. Defendant alone was taken to a closed room. Four police officers were present. After the police officers gave defendant his Miranda warnings, he signed a Miranda card and gave a statement.
About an hour later, one of the police officers again read defendant his Miranda rights and had him sign a card which asked questions about the Miranda warning. These questions were intended to elicit answers which would show that the defendant understood his Miranda rights. The officer then interviewed defendant. Defendant's statement was inconsistent with his previous statements and included elements that seemed unbelievable. After defendant had told his story, the officer began to question him about some of the details. Defendant began to change his version of what had occurred. He was accused of the murder and he admitted killing the victim, but he claimed that he had not really intended to kill her. Defendant then repeated his confession and it was tape recorded.
As the basis for objecting to the introduction of his statements, defendant claimed that he was mentally retarded and that he had, therefore, been unable to understand his Miranda rights or to knowingly waive them. He also claimed that because of his mental disability, the police should not have interviewed him without Ms. Varga present.
Defendant presented two psychologists and a psychiatrist who testified that he was retarded. The defendant had a *46 severe stuttering problem, which might cause him to appear mentally retarded to a layman, but the State's psychiatrist testified that defendant was feigning retardation and that in fact he was not mentally retarded. The State also presented defendant's supervisor at work. He testified that defendant was a quality control inspector, inspecting electrical parts, that he was a competent employee, and that his work required his reading complex manuals and engineering drawings. The State also introduced a letter that defendant had written to a friend. The letter was in his own handwriting and, in a sophisticated fashion, it described some aspects of the case against him. On the basis of this and other evidence, which was ample to support his conclusion, the trial judge found as a fact that defendant was not mentally retarded. We have no basis for disturbing that finding. See State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964).
Defendant argues that he should not have been interrogated without Ms. Varga present. That argument, however, is premised on his claim of mental retardation. It therefore falls together with its premise.
When the police took defendant for interrogation, leaving Ms. Varga behind to wait for him, she called an attorney whose name had been given to her by her aunt. That attorney told her that he would send an associate to the prosecutor's office. The attorney to whom Ms. Varga spoke directed his associate to the prosecutor's office and told him that he would be free to represent defendant if Ms. Varga asked him to. Ms. Varga then told a police officer that an attorney was on his way and that defendant should not be questioned until the attorney was present. When the attorney arrived, Ms. Varga asked him to go and help defendant through the investigation. The attorney understood the request to mean that he should act as defendant's attorney, accompanying him during his interrogation and giving him legal advice. The attorney then presented himself to the county prosecutor and said that he was there to *47 represent Ms. Varga and the defendant. The prosecutor told the attorney that defendant had not requested a lawyer and that, without such a request from defendant himself, the attorney would not be permitted to see the defendant.
Defendant contends that the refusal by the police to permit the attorney to meet with him before or during his interrogation violated his constitutional rights. For that proposition, defendant relies primarily upon State v. Elmore, 205 N.J. Super. 373, 500 A.2d 1089 (App.Div. 1985), a case in which this court suppressed a defendant's statement because the police prevented an attorney retained by the defendant's sister from seeing the defendant before the interrogation was completed. Defendant also cites a number of out-of-state cases for the same principle. See People v. Houston, 42 Cal.3d 595, 724 P.2d 1166, 230 Cal. Rptr. 141 (1986); State v. Stoddard, 206 Conn. 157, 537 A.2d 446 (1988); Bryan v. State, 571 A.2d 170 (Del. 1990); Commonwealth v. Sherman, 389 Mass. 287, 450 N.E.2d 566 (1983); Lewis v. State, 695 P.2d 528 (Okla. Crim. App. 1984); Commonwealth v. Hillard, 471 Pa. 318, 370 A.2d 322 (1977); State v. Murphy, 44 Wash. App. 290, 721 P.2d 30 (1986).
The State relies on Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) for the proposition that the defendant's rights were not violated by the failure of the police to give the attorney called by Ms. Varga access to defendant before or during his interrogation. In Moran, the United States Supreme Court squarely held, as a matter of federal constitutional law, that the police had no obligation to advise a defendant that a third party had summoned an attorney to advise him and that, in the absence of a request by the defendant himself, an attorney's presence at the police station does not affect the right of the police to interrogate him.
We agree with the trial judge in the present case that State v. Elmore is inapplicable because in Elmore the defendant herself, unlike defendant Reed, had requested an attorney. Furthermore, Elmore was based on federal constitutional *48 grounds and relied, in part, on a decision of the United States Court of Appeals for the First Circuit which the United States Supreme Court reversed in Moran v. Burbine, supra, 475 U.S. at 421-426, 106 S.Ct. at 1140-1144, 89 L.Ed.2d at 421-424. The cases contrary to the Supreme Court's decision in Moran either involved separate state constitutional grounds or they were decided before Moran. We hold that under the facts of this case there was no violation of defendant's right to counsel or his right against self-incrimination under either New Jersey or federal law.
We turn now to the defendant's contention that his conviction should be reversed because of erroneous instructions to the jury about passion-provocation manslaughter, N.J.S.A. 2C:11-4b(2). Defendant argues that the court charged the jury that they should consider whether he was guilty of passion-provocation manslaughter only if they first acquitted him of purposeful[2] and knowing murder.[3] For the following reasons, we conclude that this argument misconstrues the charge which was actually delivered in the present case.
The confusion has arisen because N.J.S.A. 2C:11-4b defines two different crimes and calls both of them manslaughter. The statute states:
Criminal homicide constitutes manslaughter when: (1) It is committed recklessly; or (2) A homicide which would otherwise be murder under section 2C:11-3 is committed in the heat of passion resulting from a reasonable provocation.
The crime described in N.J.S.A. 2C:11-4b(1), reckless manslaughter, is a lesser included offense of both purposeful and knowing murder. See State v. Grunow, 102 N.J. 133, 136-138, 506 A.2d 708 (1986). Consequently, if a defendant is being tried for purposeful or knowing murder, the jury should be told that they are to consider whether he is guilty of reckless manslaughter *49 only if they find him not guilty of murder. But according to the express terms of N.J.S.A. 2C:11-4b(2), the mitigating effect of that manslaughter provision becomes operative, not if the defendant has been acquitted of murder, but only if the jury concludes that he has committed a crime which "would otherwise be murder" unless it was "committed in the heat of passion resulting from a reasonable provocation." Because of that definition of passion-provocation manslaughter, it is error for a trial court to tell a jury that a defendant must first have been acquitted of murder before they consider whether he acted in the heat of passion resulting from reasonable provocation. State v. Coyle, 119 N.J. 194, 222-224, 574 A.2d 951 (1990).
In the present case, when the trial judge told the jury that they should consider the crime of "manslaughter" only if they first found defendant not guilty of wilful or purposeful murder, the judge had not yet mentioned passion-provocation manslaughter. The context of his instructions adequately informed the jury that when he told them not to consider whether defendant was guilty of aggravated manslaughter and manslaughter until they had first found defendant not guilty of murder, the judge was referring to the reckless homicide offenses defined by N.J.S.A. 2C:11-4a and b(1), and not to passion-provocation manslaughter defined by N.J.S.A. 2C:11-4b(2).
After correctly instructing the jury about the lesser included offenses of aggravated manslaughter and reckless manslaughter, the trial judge then proceeded to deal with passion-provocation manslaughter.[4] He accurately charged the jury in accordance with the terms of N.J.S.A. 2C:11-4b(2). Correctly allocating the burden of proof, he told the jurors, "If you find beyond *50 a reasonable doubt that the defendant committed the homicide,[5] but you have a reasonable doubt as to whether the defendant did so in the heat of passion upon a reasonable provocation, then you must find the defendant guilty of manslaughter."
However, we agree with the defendant that he was substantially prejudiced by the verdict sheet which the court supplied to the jury for their deliberations. The form should have explicitly given the jury the opportunity to return a verdict with respect to passion-provocation manslaughter. It did not do so. The only manslaughter offenses to which the verdict sheet referred were "the lesser included offense of Aggravated Manslaughter" and "the lesser included offense of Manslaughter." It directed the jury to consider the latter offense only if they found the defendant not guilty of purposeful murder, of knowing murder and of aggravated manslaughter. The court's explanation of the verdict sheet to the jury told them:
Now, only if your answer to both the first count and the second count are not guilty, do you consider the lesser included offenses of aggravated manslaughter and manslaughter.
And only if your determination is not guilty of aggravated manslaughter do you go on to manslaughter.
The effect of the erroneous form of the verdict sheet was to prevent the jury from considering whether the defendant was guilty of passion-provocation manslaughter if they found that, but for his having acted in the heat of passion as the result of reasonable provocation, he would have been guilty of purposeful or knowing murder. The jury found that defendant knowingly killed the victim, and the sufficiency of the evidence to sustain that verdict is not questioned. If there was also evidence in the record on the basis of which the jury could have harbored a reasonable doubt whether the defendant killed his *51 victim in the heat of passion as the result of reasonable provocation, the error in the verdict sheet requires reversal of the conviction of knowing murder. See State v. Powell, 84 N.J. 305, 317-324, 419 A.2d 406 (1980).
Since the trial judge instructed the jury with respect to passion-provocation manslaughter, he was necessarily of the opinion that the evidence was sufficient to require giving the jury the opportunity to find the defendant guilty of that crime as an alternative to first degree murder. In its argument before us, the State conceded that there was evidence from which the jury could have formed a reasonable doubt whether the defendant had acted in the heat of passion resulting from reasonable provocation. Our review of the defendant's statement, which was the only direct evidence of what occurred between him and his victim, leads us to the same conclusion. Accordingly, his conviction of knowing murder must be reversed.
Defendant's remaining grounds of appeal are without merit. R. 2:11-3(e)(2).
The error in the verdict sheet does not affect defendant's conviction of aggravated criminal sexual contact, and that conviction is affirmed. His conviction of having knowingly caused the death of his victim in violation of N.J.S.A. 2C:11-3a(2) is reversed. The case is remanded to the trial court for retrial solely on the second count of the indictment.
NOTES
[1] Because of the nature of the crime, we have omitted the victim's name and we refer to her throughout this opinion as "the victim." Obviously, we mean no disrespect.
[2] N.J.S.A. 2C:11-3a(1).
[3] N.J.S.A. 2C:11-3a(2).
[4] The transition in subject matter from reckless manslaughter to passion/provocation manslaughter is somewhat obscured in the transcript by incorrect paragraphing. But that, of course, is the error of the transcriber.
[5] The instruction should have said, "... committed the homicide purposely or knowingly," but that qualification was adequately implied by the immediately preceding paragraph of his charge.