FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2018 JUL -2 AM 8: 36

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77275-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| BRANDON LYNN VANWINKLE, | ) | |
| Appellant. | ) | FILED: July 2, 2018 |

APPELWICK, C.J. — VanWinkle was convicted of an assault which occurred in a courtroom. Simple assault while in a courtroom is an assault in the third degree when signage at any public entrance to the courtroom warns of this fact. VanWinkle argues his conviction cannot be upheld, because no warning sign was posted at the entrance where he and other in-custody defendants entered. He also argues that the jury instructions misstated the law, and that juror misconduct occurred. We affirm.

## FACTS

As Brandon VanWinkle waited in custody in a courtroom for a case against him to be called, he observed proceedings in a different case. After VanWinkle's proceedings concluded, officers began to escort him from the courtroom, but VanWinkle physically attacked the defendant from the other case. Because the assault occurred in a courtroom, VanWinkle was charged with third degree assault.

VanWinkle moved to dismiss, arguing that the courtroom entrance that he used did not contain signage required by statute. The trial court denied the motion. VanWinkle was convicted. He appeals.

## DISCUSSION

VanWinkle makes three arguments. First, he argues that the trial court erred in denying his motion to dismiss, because it misinterpreted the statute that requires a sign to be posted that warns that assault in a court room is third degree assault. Second, he argues that the jury instructions misstated the signage requirement. Third, he argues that juror misconduct warrants a new trial.

I. <u>Statutory Interpretation</u>

VanWinkle first contends that the courtroom did not contain a sign, as required by statute, warning that an assault in a courtroom is in the third degree.

RCW 9A.36.031(1)(k) states that a person is guilty of assault in the third degree if he or she assaults a person located in a courtroom "(i) [d]uring the times when a courtroom, jury room, or judge's chamber is being used for judicial purposes during court proceedings; and (ii) if signage was posted in compliance with RCW 2.28.200 at the time of the assault." RCW 2.28.200 prescribes where signs must be posted:

> (1) Signage shall be posted notifying the public of the possible enhanced penalties under chapter 256, Laws of 2013.

> (2) The signage shall be prominently displayed <u>at any public entrance to a courtroom.</u>

(Emphasis added.)

2

In this case, VanWinkle entered the courtroom while in custody. He entered not through the public entrance, but through a limited access entrance not available to the general public. The entrance used by VanWinkle was a secured entrance used by officers and in-custody defendants. There was no signage posted at this entrance. The trial court ruled that it was not public. VanWinkle argues that this was error, because he is a member of the public, and would never otherwise have an opportunity to see the sign.

Statutory interpretation is a question of law that this court reviews de novo. State v. Gray, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012). The court's primary duty in construing a statute is to ascertain and carry out the legislature's intent. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Statutory interpretation begins with the statute's plain meaning, which we discern from the ordinary meaning of the language used in the context of the entire statute, related statutory provisions, and the statutory scheme as a whole. Id. If the statute's meaning is unambiguous, our inquiry ends. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Conversely, a statute is ambiguous when it is susceptible to two or more reasonable interpretations, but not merely because different interpretations are possible. In re Det. of Aston, 161 Wn. App. 824, 842, 251 P.3d 917 (2011).

Here, we need look no further than the plain language of the statute. Absent a special status, the public cannot use the secured entrance used by in-custody defendants. VanWinkle effectively argues that a sign is required if members of the public, such as VanWinkle, might use the entrance. But, his suggested rule would

require a sign at every entrance. The statutory language requires signs at any public entrance.[1] RCW 2.28.200. The statute's use of "public" to modify entrance implies a distinction from "nonpublic" entrances, those not open to the general public. Thus, it is clear the legislature did not intend the phrase "any public entrance" to mean every entrance. Id. It is also clear that signage at a nonpublic entrance, such as the secured entrance used by in-custody defendants, was not subject to signage in order for the courtroom to be in compliance with RCW 2.28.200.[2]

We hold that the signage of the courtroom satisfied RCW 2.28.200.

## II. Jury Instructions

VanWinkle next argues that the jury instructions misstated the law by stating that a warning sign must be posted at "the" public entrance, rather than "any" public

---

[1] VanWinkle cites authority that he claims supports the argument that the term "any" is most often interpreted to mean "all" or "every." But, because we hold that the secured entrance is not a public entrance, the meaning of "any" is of no consequence in this case.

[2] VanWinkle analogizes to an unpublished opinion of this court, State v. Tapia, No. 32558-0-III, (Wash. Ct. App. Sept. 15, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/325580.unp.pdf. In Tapia, the defendant was charged with trespass for entering school property. Id. at 1-2. An applicable statute created a defense to trespass when there is no posted notice, on unfenced premises otherwise open to the public, which instructs the public when they were not permitted to enter. Id. at 4. Even though no signage was posted, the trial court convicted, because a reasonable person would have believed he or she was trespassing. Id. at 3, 5. The State conceded that the evidence was insufficient because no signage was posted, and the Court of Appeals therefore reversed. Id. at 5.

This unpublished case does not compel reversal, because here the primary issue is whether notice was required to be posted at a specific location. But, in Tapia, there was no dispute as to whether the school was required to have signage at the specific location in question. See id. at 4.

4

entrance. He argues that the use of the term "the," rather than "any" is error, because RCW 2.28.200 refers to "any" public entrance.

This court reviews alleged errors of law in jury instructions de novo. State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. Id. And, this court reviews jury instruction errors for constitutional harmless error. See State v. Berube, 150 Wn.2d 498, 505, 79 P.3d 1144 (2003). A constitutional error is harmless if it appears beyond a reasonable doubt that the error did not contribute to the ultimate verdict. Id. When applied to an element omitted from, or misstated in, a jury instruction, the error is harmless if that element is supported by uncontroverted evidence. Id.

As a matter of law, the statute did not require signage at the entrance to the courtroom used by VanWinkle, because it was not a public entrance. Testimony showed that there was a single entrance to the courtroom available to the general public. A sign complying with the statute was displayed by this entrance. Thus, whether the jury was instructed that a sign was required at one public entrance (i.e., "the"), or all public entrances (i.e., "any") was of no consequence.[3]

VanWinkle cites to a case, State v. Cronin, 142 Wn.2d 568, 576-77, 581-82, 14 P.3d 752 (2000), where the court found reversible error in an accomplice

_____

[3] VanWinkle argues that, because the jury asked a question to the court about signage during deliberations, the instruction likely affected their verdict. But, because we hold that, as a matter of law, signage was not required at VanWinkle's entrance, the jury's deliberation on this matter is not relevant to our analysis.

liability instruction that referred to "a crime" rather than "the crime." But, this authority is inapplicable to this case. There, the choice of terms created impermissible ambiguity as to which crime was being referenced. See id. at 582. Here, there was only one public entrance, and thus "the" functionally conveyed the same meaning as "any." The instruction did not contain an ambiguity or misstate the law.

III.   Juror Misconduct

VanWinkle next argues that the trial court erred in denying his motion for a mistrial due to juror misconduct. He argues that jurors discussed the case prematurely.[4]

A party petitioning for a new trial on the grounds of premature deliberations must establish that the communication prejudiced the outcome of the trial. See Tate v. Rommel, 3 Wn. App. 933, 936-37, 478 P.2d 242 (1970). And, this court will not reverse a trial court's ruling on a motion for new trial absent a showing of abuse of discretion. State v. Balisok, 123 Wn.2d 114, 117, 866 P.2d 631 (1994).

Here, the trial court's denial of the motion was well within its discretion. Juror 10 expressed concerns for her safety to three fellow jurors and the trial court bailiff. The bailiff alerted the trial court about the situation, because juror 10 refused

---

[4] VanWinkle frames his argument under the principle that "[c]ommunications by or with jurors constitute misconduct." State v. Murphy, 44 Wn. App. 290, 296, 721 P.2d 30 (1986). Once established, such communication gives rise to a presumption of prejudice, which the State has the burden of disproving beyond a reasonable doubt. Id. But, VanWinkle's argument is that the jurors discussed the case too early. This is a premature deliberation argument, not an improper communication argument, which might typically involve a juror discussing the case with a nonjuror. Nor is there any indication that the jurors discussed the substance of the case.

to speak in court. The trial court examined the jurors. The three jurors whom juror 10 had spoken to all stated that juror 10 had expressed safety concerns. But, all three jurors to whom juror 10 had spoken stated that they had not discussed the substance of the case. The trial court questioned every member of the jury to ensure that it was fully apprised of what had happened, and that it did not affect their verdict. No premature deliberations occurred. Juror 10 was dismissed, and replaced by an alternate juror.

The trial court's denial of the motion for new trial was not an abuse of discretion.

We affirm.

WE CONCUR: