79 P.3d 1144 (2003)
150 Wash.2d 498
STATE of Washington, Respondent,
v.
Christine BERUBE, Petitioner,
State of Washington, Respondent,
v.
Kory L. Nielsen, Petitioner.
No. 71616-1.
Supreme Court of Washington, En Banc.
Argued May 20, 2003.
Decided November 13, 2003.
*1146 Nancy L. Talner, Kenmore, Washington Appellate Project, Nancy P. Collins, Seattle, for petitioners.
Gerald Horne, Pierce County Prosecutor, John M. Neeb, Deputy, Tacoma, Juelanne Dalzell, Jefferson Couty Prosecutor, Port Townsend, for respondent.
*1145 BRIDGE, J.
Christine Berube and Kory Nielsen were convicted of homicide by abuse and each was given an exceptional sentence of 640 months. Their convictions and sentences were affirmed by Division Two of the Court of Appeals. Berube and Nielsen seek review of the Court of Appeals unpublished opinion, arguing that the trial court gave an erroneous accomplice liability instruction that cannot be considered harmless, erroneously instructed the jury that a failure to act creates criminal liability, and erroneously imposed exceptional sentences. Berube also argues that there is insufficient evidence to support her conviction as an accomplice. We affirm the Court of Appeals.

I
Berube and Nielsen each made a call to the 9-1-1 dispatch at approximately 3:30 a.m. on April 24, 1998 to report that Berube's 23-month-old son, Kyle Theis, was cold and not breathing. Paramedics who arrived at the home were unable to revive Kyle and he was pronounced dead at the hospital at 4:45 a.m. Emergency room doctors noticed extensive bruising on Kyle, one doctor even observing that Kyle presented with the largest number of bruises he had seen on one child's body at one time.
Kyle's bruises were numerous and varied in age. There was extensive bruising on his forehead, cheeks and around both ears. He had numerous bruises on his upper, middle and lower back, and several abrasions on his shoulder. Kyle also had bruises all over his arms, hands, near his groin, and on his left calf and foot. There were bruises on his chest, neck and abdomen, which included "pattern injuries" on the chest and abdominal area. The pattern injury to the chest was consistent with being hit with a belt.
Kyle had two areas of significant hair loss. One of the areas had a small abrasion and some bruising within it. The hair that was left in the areas indicated that it was a traumatic loss of hair that was pulled out at different times. Kyle also had a one-inch wide and one-half inch deep gaping injury to the frenulum in his upper lip.
The autopsy revealed that Kyle had two skull fractures, two subdural hemotomas, subarachnoid hemorrhages, and retinal hemorrhages in both of his eyes. One of the subdural hemotomas was acute and most likely occurred within 24 hours of Kyle's death. The autopsy showed a lower back spinal injury that was likely caused by a twisting motion or by being slammed into a sitting position. Kyle's cause of death was classified as inflicted injury resulting from blunt force impact to the head.
*1147 Berube and Nielsen were both charged by amended information with homicide by abuse, as principal or accomplice, on June 10, 1998. Their cases were consolidated for trial by agreed order on May 22, 1998. Berube filed a motion to continue trial, which the State agreed to, and the trial court set the trial for September 9, 1998. Nielsen opposed the continuance on the grounds of speedy trial and unsuccessfully sought to sever the two cases.
The jury found Berube and Nielsen guilty of homicide by abuse and the trial court imposed on each an exceptional sentence of 640 months. Berube and Nielsen appealed to Division Two of the Court of Appeals on various grounds. Berube claimed there was insufficient evidence to convict her as an accomplice. Nielsen contended that his trial should have been severed from Berube's and that Berube's continuance violated his own speedy trial rights. Jointly, Berube and Nielsen argued that jury instructions relating to accomplice liability misstated the law and relieved the State of its burden of proof. They also argued that another jury instruction was flawed in that it allowed both of them to be convicted as an accomplice based on the failure to act rather than by an affirmative action. Finally, Berube and Nielsen claimed that their sentences were unlawful because they were not factually supported.
In an unpublished opinion,[1] the Court of Appeals agreed that the jury instructions relating to accomplice liability misstated the law. However, it concluded that the error was harmless and affirmed the convictions. The court also affirmed both exceptional sentences. Berube and Nielsen sought review. We originally deferred the petitions pending our decision in State v. Brown, 147 Wash.2d 330, 58 P.3d 889 (2002). The petitions were ultimately granted on February 4, 2003.

II

Accomplice Liability Jury Instruction 18
Jury instruction 18 given in Berube and Nielsen's trial states:
A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.
A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she either:
(1) solicits, commands, encourages, or requests another person to commit the crime; or
(2) aids or agrees to aid another person in planning or committing a crime.
The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.
Berube Clerk's Papers (BCP) at 53; Nielsen Clerk's Papers (NCP) at 147 (emphasis added). Berube and Nielsen claim that jury instruction 18 was erroneously given. See State v. Roberts, 142 Wash.2d 471, 509-13, 14 P.3d 713 (2000) (General knowledge of "the crime" is sufficient for conviction under the accomplice liability statute; however, knowledge by the accomplice that the principal intends to commit "a crime" does not impose strict liability for any and all offenses that follow.); State v. Cronin, 142 Wash.2d 568, 579, 14 P.3d 752 (2000) (the fact that a purported accomplice knows that the principal intends to commit "a crime" does not necessarily mean that accomplice liability attaches for any and all offenses ultimately committed by the principal).
The Court of Appeals agreed that the trial court erred in giving jury instruction 18. However, it found that the error was harmless. Berube and Nielsen contend that the error was not harmless because it relieved the State of its burden of proof, which could never be a harmless error, and requires automatic reversal. Our recent decision in *1148 Brown provides a framework for determining whether an erroneous jury instruction regarding accomplice liability constitutes a harmless error.
In Brown, an identical accomplice liability jury instruction was given. This court found that although "[i]t is a misstatement of the law to instruct a jury that a person is an accomplice if he or she acts with knowledge that his or her actions will promote any crime," Brown, 147 Wash.2d at 338, 58 P.3d 889, "not every omission or misstatement in a jury instruction relieves the State of its burden" so as to require reversal. Id. at 339, 58 P.3d 889. Therefore, a harmless error analysis is warranted. "Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), cited in Brown, 147 Wash.2d at 340, 58 P.3d 889.
Under the Neder test, as adopted in Brown, to determine that a constitutional error is harmless, it must appear beyond a reasonable doubt that the error did not contribute to the ultimate verdict. Brown, 147 Wash.2d at 341, 58 P.3d 889. "When applied to an element omitted from, or misstated in, a jury instruction, the error is harmless if that element is supported by uncontroverted evidence." Id.[2] The error can also be held harmless if accomplice liability was considered by the jury only in terms of the charged crime. State v. Borrero, 147 Wash.2d 353, 365, 58 P.3d 245 (2002). Further, if the record supports a finding that the jury verdict would be the same absent the error, harmless error may be found. See, e.g., id.
The crime with which Berube and Nielsen were charged with was homicide by abuse.[3] RCW 9A.32.055(1) defines this crime as follows:
(1) A person is guilty of homicide by abuse if, under circumstances manifesting an extreme indifference to human life, the person causes the death of a child or person under sixteen years of age, a developmentally disabled person, or a dependent adult, and the person has previously engaged in a pattern or practice of assault or torture of said child, person under sixteen years of age, developmentally disabled person, or dependent person.
It is undisputed that the trial court erred in instructing the jury that Berube and *1149 Nielsen could be found guilty as accomplices if they knew their actions would promote or facilitate the commission of any crime, and not only the crime charged. The omitted element in the jury instruction is that the State must prove Berube and Nielsen had general knowledge of the crimein this case homicide by abuse.
Homicide by abuse is a unique crime because the defendant must have engaged in a pattern or practice of either assault or torture. The record provides overwhelming evidence that Berube and Nielsen were active participants in the repetitive beatings of Kyle, which ultimately led to his death. The record also shows that both Berube and Nielsen were present on April 23, 1998 when the final beating was inflicted on Kyle. It is apparent that Berube and Nielsen were trying to conceal what happened to Kyle that night. Berube and Nielsen both claimed that Kyle hit his head while running around a couch and that this may have been the cause of his death. However, the autopsy revealed many more injuries that could not have been the result of Kyle hitting his head while running around a couch.
The record establishes that Berube and Nielsen engaged in a pattern or practice of assault under the guise of "disciplining" Kyle. There were numerous witnesses who testified about Berube's abusive behavior toward Kyle. On several occasions, Berube pulled Kyle's hair when Kyle pulled someone else's hair. She had hit him over the head with one of his books because he had torn out a page. Berube would "smack" Kyle across the face because he was being fussy. She had hit him with a spatula because he was playing with his food. There was also evidence that Berube would drop Kyle into his playpen from the height of the railing and would throw him into the playpen from several feet away. When Berube became frustrated with "disciplining" Kyle, she would ask Nielsen to take over because the spankings were hurting her hand. There were also incidents of her throwing toys at Kyle because she was upset that he was playfully throwing toys at her.
Kyle would routinely cry when Nielsen took him by the hand. Nielsen also threw a hard slipper at Kyle, hitting him on the shoulder. Less than one week before Kyle died, Nielsen was observed carrying Kyle, who was "[h]anging loosely down" and "totally limp," looped through his arm "like you would carry an animal." Record of Proceedings (RP) at 601-02. Kyle had a large bald spot on his head, and a large clump of his hair that was probably "forcibly pulled" from his head was found in the cab of Nielsen's truck. Id. at 1305, 1153, 1249-51.
Kyle also had several significant injuries that were not witnessed when inflicted. However, the record indicates that Berube and Nielsen were the only persons who had access to Kyle. Berube and Nielsen talked openly about Kyle's injuries (i.e., Kyle's cauliflower ear and how Kyle could never keep his head straight and kept on closing his eyes like he was trying to sleep), but never took Kyle to see a doctor. There was a period of time where Kyle would "moan" a lot and appeared to gag when he tried to eat or drink. RP at 686. However, he was never taken to the doctor to be examined.
There is also overwhelming evidence to prove that Berube and Nielsen worked together to assault Kyle. Berube and Nielsen would require Kyle to stand facing a corner when they felt he needed a time-out. If Kyle tried to sit down, they would yell at him to stand up. Berube would often discipline Kyle for his actions during the day, but then she would tell Nielsen what Kyle's actions were and encourage Nielsen to discipline Kyle again.[4] There were also instances when Berube and Nielsen would take Kyle into their roomout of sight of Jesse Nielsen (Nielsen's teenage son from a prior marriage)and beat Kyle with a belt. Jesse testified at trial that he could hear Kyle being hit with the belt, and would hear Kyle screaming and crying. He also heard Berube ask, "How did that belt feel?" and Nielsen ask, "Did that belt hurt?" RP at 688-90.
*1150 This testimony that Kyle had been beaten with a belt is consistent with the autopsy report that Kyle had a number of pattern injuries of differing ages.
These actions by Berube and Nielsen and countless others corroborated by the testimony of witnesses provide overwhelming evidence that there was a pattern or practice of assault as required by the homicide by abuse statute. It is logical to conclude that a person becomes a participant to homicide by abuse when he or she engages in a pattern or practice of assault against a child. In Washington, an accomplice need not be aware of the exact elements of the crime. See Roberts, 142 Wash.2d at 512, 14 P.3d 713. As long as the defendant engaged in conduct that is "the crime," the defendant may be found guilty. Id. at 512-13, 14 P.3d 713. Here, it is well established that Berube and Nielsen each engaged in a pattern or practice of assault against Kyle, and the conduct of each was part of the crime of homicide by abuse. Therefore, the record clearly supports a finding that the jury verdict of conviction would be the same absent the error.
Further, because only one crime was charged against Berube and Nielsen, we find no possible confusion between "a" crime and "the" crime in this case. There is no reasonable doubt that the jury convicted both Berube and Nielsen on the basis of the abuse inflicted upon Kyle and not some other undefined or other crime charged or uncharged.[5]Cf. State v. Bland, 71 Wash.App. 345, 354, 860 P.2d 1046 (1993) (erroneous jury instruction was harmless because none of the evidence supported an alternative uncharged crime).

Failure to Act Proximate Cause Jury Instruction 10
Jury instruction 10 given in Berube and Nielsen's trial states:
To constitute homicide by abuse, there must be a causal connection between the death of a human being and the criminal conduct of a defendant so that the act done or omitted was a proximate cause of the resulting death.
The term "proximate cause" means a cause which, in a direct sequence, unbroken by any new independent cause, produces the death, and without which the death would not have happened.
BCP at 45; NCP at 139 (emphasis added). Berube and Nielsen claim that this jury instruction allowed each of them to be convicted as an accomplice based on a failure to act rather than requiring an affirmative act. For support, they cite to State v. Jackson, 137 Wash.2d 712, 976 P.2d 1229 (1999).
In Jackson, foster parent defendants were convicted of second degree felony murder of their foster child. 137 Wash.2d at 715, 976 P.2d 1229. Each defendant appealed to the Court of Appeals claiming that the trial court committed reversible error by including a "`duty exists for a parent to come to the aid of their small children'" element in its jury instruction regarding accomplice liability. Id. (quoting State v. Jackson, 87 Wash.App. 801, 810, 944 P.2d 403 (1997)). The Court of Appeals agreed with the defendants, reversing the conviction and remanding for a new trial. Id. This court agreed with the Court of Appeals and held that accomplice liability does not attach to instances where a person fails to come to the aid of another. Id. at 722-23, 976 P.2d 1229.
The Court of Appeals in this case was correct in distinguishing Jackson from the facts in this case. Jury instruction 10 does not state nor intimate that the defendant *1151 had a legal duty to act. Also, jury instruction 10 relates to homicide by abuse, whereas the flawed instruction in Jackson related to accomplice liability. The jury instruction in this case correctly recites that proximate cause is an element of the crime of homicide by abuse. There is no error.

Sufficiency of the Evidence
Berube, alone, argues that the evidence of her complicity in Kyle's death was insufficient to instruct the jury on accomplice liability. Jury instructions must accurately state the law and be supported by the evidence. State v. Benn, 120 Wash.2d 631, 654, 845 P.2d 289 (1993), cert. denied, 510 U.S. 944, 114 S.Ct. 382, 126 L.Ed.2d 331 (1993). It is an error to submit a theory for which there is insufficient evidence. Id. To survive a challenge to a claim of sufficiency, the evidence need only be sufficient to permit conviction by a rational trier of fact. See State v. Munden, 81 Wash.App. 192, 195, 913 P.2d 421 (1996).
For Berube's conviction as an accomplice to stand, the evidence must support a finding that she solicited, commanded, encouraged or requested Nielsen to commit the crime charged, or she must have aided or agreed to aid him in planning or committing it, knowing that her acts would either promote or facilitate the crime. See RCW 9A.08.020(3)(a) (requirements for accomplice liability). As an accomplice, Berube need not participate in or have specific knowledge of every element of the crime nor share the same mental state as the principal. State v. Sweet, 138 Wash.2d 466, 479, 980 P.2d 1223 (1999); State v. Hoffman, 116 Wash.2d 51, 104, 804 P.2d 577 (1991).
The record provides overwhelming evidence to support the State's contention that Berube was an accomplice to the crime of homicide by abuse. Several witnesses testified that Berube had asked Nielsen to discipline Kyle. One witness, a former housemate of Berube and Nielsen, testified that Berube complained that "all the spankings were doing was ... hurting her hand." RP at 806. Berube would ask Nielsen to help her discipline Kyle. Another witness testified that Berube would solicit Nielsen to discipline Kyle by stating, "Kory, you're going to have to deal with him cuz nothing I do works" and "You need to deal with him cuz I can't anymore." Id. at 780. Nielsen even testified that he disciplined Kyle when Berube would ask, "Can you do something about that?" Id. at 1600. Further, Berube would often discipline Kyle for his actions, but then would tell Nielsen what Kyle had done and Nielsen would discipline Kyle again. Berube was aware and/or present when Nielsen assaulted Kyle with a belt. To prevent Kyle from watching Berube and Nielsen smoke marijuana, Nielsen designated a place from which Kyle was to watch television. If Kyle averted his gaze from this designated spot, he would be disciplined. Berube testified that she approved of Nielsen disciplining Kyle under those circumstances.
Berube was aware of Nielsen's severe physical abusive behavior toward Kyle, and even put Kyle into positions where Nielsen would assault him. Berube need not be aware of the elements of the crime of homicide by abuse. See Sweet, 138 Wash.2d at 479, 980 P.2d 1223 ("It is not necessary for an accomplice to have specific knowledge of every element of the principal's crime."). It is enough that Berube knew her actions would promote the abuse and that she encouraged the abusive behavior.
There is ample evidence to support the accomplice liability instructions pertaining to Berube. Her actions promoted and/or facilitated the abuse suffered by Kyle, which eventually led to his death.

Exceptional Sentence
Berube and Nielsen both challenge the factual bases that were used by the trial court in imposing exceptional sentences. A sentencing court may impose an exceptional sentence for "substantial and compelling reasons." Former RCW 9.94A.120(2) (1998).[6] We will overturn an exceptional sentence only if the reasons for the sentence are unsupported by the record, the reasons do *1152 not justify an exceptional sentence, or the sentence is either clearly excessive or clearly too lenient. Former RCW 9.94A.120(4) (1998). Whether the reasons justify an exceptional sentence is reviewed de novo. State v. Nordby, 106 Wash.2d 514, 518, 723 P.2d 1117 (1986). The trial court's reasoning will be upheld unless it is clearly erroneous. Id.
The trial court found three aggravating factors to justify the exceptional sentences: victim vulnerability, abuse of trust, and deliberate cruelty. The trial court based the aggravating factor of victim vulnerability on the fact that Kyle was only 23 months old when he was killed, and that the abuse he endured had taken place prior to that time. The fact that Berube was Kyle's parent and Nielsen was a parent-figure gave them unmonitored access to Kyle. Both individuals abused their positions by repeatedly assaulting Kyle until the injuries finally killed him. With regard to the third aggravating factor, the trial court found that although the crime of homicide by abuse encompasses behavior that generally could be described as deliberate cruelty, it remains possible for a defendant to engage in gratuitous violence more egregious than that proscribed. RP at 2429 ("It is possible to engage in conduct that satisfies the mental element of the crime, extreme indifference to human life, by more passive less violent means...."). The trial court found that deliberate cruelty is a proper aggravating factor in this case because the abuse inflicted on Kyle resulted in horrendous injuries, far exceeding the prohibited conduct.
Berube and Nielsen argue that these aggravating factors are inherent in the offense of homicide by abuse and may not be used to justify an exceptional sentence. We disagree.
Extreme youth is a valid aggravating factor when considering the vulnerability of a victim. See State v. Russell, 69 Wash.App. 237, 251-52, 848 P.2d 743 (victim's age may be aggravating if it makes him more vulnerable than other victims of the same crime), review denied, 122 Wash.2d 1003, 859 P.2d 603 (1993). When Kyle was killed, he was only two years old. The evidence demonstrates that Kyle was completely dependent on Berube and Nielsen for his well being. Kyle was unable to communicate to any other adult about the abuse imposed on him by his caregivers. His lack of ability to defend himself or to call for help made Kyle an extremely vulnerable victim.
A familial or same household relationship is clearly not an element of the homicide by abuse crime. Russell, 69 Wash. App. at 252, 848 P.2d 743. Therefore, Berube and Nielsen's actions amounted to an abuse of their position of trust toward Kyle and can be considered as an aggravating factor by the sentencing court. See State v. Grewe, 117 Wash.2d 211, 220, 813 P.2d 1238 (1991) (the trust between the perpetrator and the victim renders the victim particularly vulnerable).
Likewise, the trial court's consideration of deliberate cruelty was proper under these factors. Deliberate cruelty is "`gratuitous violence, or other conduct which inflicts physical, psychological or emotional pain as an end in itself.'" State v. Talley, 83 Wash. App. 750, 760, 923 P.2d 721 (1996) (quoting State v. Strauss, 54 Wash.App. 408, 418, 773 P.2d 898 (1989)), aff'd, 134 Wash.2d 176, 949 P.2d 358 (1998). There was testimony showing that Kyle was repeatedly beat with the belt. There is also evidence in the record that Nielsen assaulted Kyle with a cable cord on at least one occasion because the belt was no longer effective. Testimony establishes that on the day of his death, Kyle was forced to run in circles around a couch because Nielsen had determined that Kyle was becoming lazy. Nielsen made Kyle run faster by picking up a belt and running after Kyle. When Kyle turned around to look at Nielsen, Nielsen "smacked him ... two or three times." RP at 1856. Further, as discussed above, Kyle's abuse was exacerbated because Berube would often discipline Kyle for his behavior, but then would inform Nielsen of Kyle's behavior, which led Nielsen to discipline Kyle again. These actions by Berube and Nielsen constitute deliberate cruelty. The trial court's use of this aggravating factor to support the exceptional sentences was not erroneous.

*1153 III
It is undisputed that the trial court erred in instructing the jury that an accomplice must have knowledge that his or her actions will promote or facilitate the commission of a crime rather than the specific crime charged. However, under our test in Brown, it is clear that the error was harmless. There is sufficient evidence to support the remaining challenged instructions which are a correct statement of the law of proximate cause and accomplice liability. Substantial and compelling evidence supports the trial court's exceptional sentences.

The Court of Appeals is affirmed.
MADSEN, IRELAND, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.
SANDERS, J. (dissenting).
I agree with the majority that the accomplice liability instruction given in this case was erroneous because it allowed the jury to convict Christine Berube and Kory Nielsen as accomplices to the crime of homicide by abuse without proof that each acted with general knowledge that the other intended to commit that crime. Majority at 1148-1149. I also agree an instruction which omits or misstates an element of the crime may be harmless if it appears beyond a reasonable doubt that error did not contribute to the ultimate verdict. Id. at 1148. But I do not agree the majority applied that stringent standard to the case at hand.
The majority concludes that "the record clearly supports a finding that the jury verdict of conviction would be the same absent the error." Majority at 1150. The majority purports to base this claim on "overwhelming evidence that Berube and Nielsen were active participants in the repetitive beatings of Kyle," "overwhelming evidence to prove that Berube and Nielsen worked together to assault Kyle," and "overwhelming evidence that there was a pattern or practice of assault." Majority at 1149, 1150.
A constitutional error is harmless if the reviewing court "is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." State v. Guloy, 104 Wash.2d 412, 425, 705 P.2d 1182 (1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1208, 89 L.Ed.2d 321 (1986). To determine whether a constitutional error is harmless under the overwhelming evidence test, the court "looks only at the untainted evidence to determine if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." Id. at 426, 705 P.2d 1182; see also State v. Damon, 144 Wash.2d 686, 694, 25 P.3d 418, 33 P.3d 735 (2001). Furthermore as the United States Supreme Court stated in Neder v. United States, 527 U.S. 1, 19, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), "where the defendant contested the omitted element [of a jury instruction] and raised evidence sufficient to support a contrary finding" a reviewing court "should not find the error harmless."
Despite the majority's characterization of the evidence of guilt in this case as "overwhelming," the State's evidence is not so overwhelming that it necessarily leads to a verdict of guilty. Here the evidence upon which the majority relies to conclude the jury verdict of conviction would be the same absent the erroneous jury instruction was disputed. Both Berube and Nielsen denied abusing Kyle alone or in concert with each other. Nielsen denied ever abusing Kyle, saying only that he "swatted him on the butt a couple of times." Verbatim Report of Proceedings at 1598. When asked about certain alleged instances of abuse, Neilsen claimed total ignorance. He claimed Kyle died after hitting his head on the living room couch and then hitting his head on the linoleum floor. When directly asked, "[D]id you kill Kyle Thies?" Nielsen answered, "No, I did not." Id. at 1694. When asked if he had any "part of the series of assaults and injuries that [Kyle] suffered?" Nielsen answered "No." Id. at 1696. And he also denied ever witnessing any abuse by Berube and refused to blame her for Kyle's death.
Although Berube admitted "popping [Kyle] in the mouth, or smacking him on the hands," she otherwise laid the blame for Kyle's injuries on Nielsen. Id. at 1927. When asked why she did not "do everything in [her] power to save Kyle's life," Berube claimed, "I had no idea his injuries were what has been shown. I had no idea his spine was that way.
*1154 I had no idea he had a skull fracture. I had no idea he had retinal hemorrhages. I knew he had bruises." Id. at 1918. The testimony of both Berube and Nielsen contradicts other evidence that they were active participants in the repetitive beatings, worked together to assault Kyle, and engaged in a pattern of abuse.
The evidence presented in this case would permit a properly instructed jury, for example, to rest its verdict on (1) Berube's testimony but not the State's or Neilsen's; (2) Neilsen's testimony but not the State's or Berube's; or (3) the State's evidence but not Berube's or Neilsen's. The evidence in this case does not necessarily lead to only one of those competing results. A properly instructed jury could reasonably have found the evidence presented by Berube and/or Neilsen sufficient to conclude that one did not act with general knowledge that the other intended to commit homicide by abuse. As this court recognized so eloquently almost 70 years ago, the trier of fact has "the peculiar advantage of seeing the witnesses, observing their demeanor, weighing their testimony, and considering it in the light of all the evidence." Ryckman v. Johnson, 190 Wash. 294, 300-01, 67 P.2d 927 (1937). We cannot substitute our judgment for that of the jury's where the State's key evidence of guilt was directly disputed and where we have neither seen nor heard the witnesses testify. Even if we were persuaded a properly instructed jury would probably convict, we cannot determine this "beyond a reasonable doubt" from a cold record. Fact finding is outside our province as an appellate court.
The majority also improperly concludes the erroneous accomplice liability instruction could not have affected the verdict because the defendants were charged with only one crime. Majority at 1150. This is inconsistent with State v. Bui, one of two cases consolidated in State v. Cronin, 142 Wash.2d 568, 14 P.3d 752 (2000). 142 Wash.2d at 571-72, 14 P.3d 752. Bui concerned the use of an accomplice liability instruction identical to that in the current case. Id. at 572, 14 P.3d 752. Even though Bui was charged only with first degree assault we recognized the instruction was harmful because it allowed the jury to convict him as an accomplice even if the jury was only convinced he had general knowledge of the lesser crime of harassment. Id. at 580-81, 14 P.3d 752.
The instruction is equally harmful in this case. Berube and Nielsen both claimed Kyle hit his head while running around the couch and this might have caused his death. Majority at 1149. If the jury believed this testimony, the jury could have concluded that Berube and Nielsen abused Kyle but did not actually kill him, and thus were at most only guilty of assault. Yet the accomplice liability instruction would have allowed the jury to convict Berube and Nielsen as accomplices to homicide by abuse even if the State had proved only general knowledge of assault.
For these reasons I dissent.
ALEXANDER, C.J., and JOHNSON, J., concur.
NOTES
[1] State v. Berube, No. 24136-6-II, State v. Nielsen, No. 24171-4-II, 107 Wash.App. 1035, 2001 WL 873853 (2001).
[2] In Neder the defendant was charged with tax fraud. The omitted element from the jury instructions involved the issue of materiality. 527 U.S. at 6, 119 S.Ct. 1827. The Supreme Court found that the omission of this element was harmless because it found the jury verdict would have been the same absent the error. Id. at 19, 119 S.Ct. 1827. Further, the Neder opinion did not hold that uncontroverted evidence was the only means by which a reviewing court could find harmless error. In fact, the Supreme Court stated:

Of course, safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the errorfor example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary findingit should not find the error harmless.
Id. at 19, 119 S.Ct. 1827. Thus, if a reviewing court finds that the evidence presented by the defendant was not sufficient to support a contrary finding, it may find the error harmless. Neder clearly supports the view that uncontroverted evidence is not the only means for us to find harmless error. "Indeed, it is the rare criminal trial in which the State's key evidence is not controverted in some way, though not always by way of testimony of the defendant." In re Pers. Restraint of Smith, 117 Wash.App. 846, 866, 73 P.3d 386 (2003).
[3] The crime of homicide by abuse was created in response to the tragic death of Eli Creekmore in 1986. See generally State v. Creekmore, 55 Wash. App. 852, 783 P.2d 1068 (1989), review denied, 114 Wash.2d 1020, 792 P.2d 533 (1990). The Creekmore case caused public outrage because at the time, the most serious charge that could be brought against one who allegedly severely and repeatedly beat a child and then eventually killed that child was second degree felony murder. The crime of homicide by abuse allowed prosecutors to seek penalties similar to those for conviction of murder in the first degree. See SENATE JOURNAL, 50th Leg., Reg. Sess., at 156-58 (Wash. 1987) (Senator Talmadge:"We made this as serious a crime as we can make it. We don't want to have a prosecutor be faced with ... not being able to seek murder in the first degree against someone who did this kind of damage to a child.").
[4] For example, Kyle once tried to pick up his younger brother from the stroller and Berube spanked him and "threw-put him in the corner." RP at 680. When Nielsen came home from work, Berube relayed to him what Kyle had done and Nielsen proceeded to spank Kyle and made him go stand in the corner.
[5] The dissenting opinion argues that we have improperly concluded that the erroneous jury instructions could not have affected Berube and Nielsen's verdicts because they were only charged with one crime. Dissent at 1154. For support, the dissent relies on State v. Bui, which was consolidated with State v. Cronin, 142 Wash.2d 568, 14 P.3d 752. In Bui, this court found that the erroneous jury instruction was not harmless because the jury could have found that Bui was guilty of first degree assault even if the jury was only convinced that Bui had general knowledge of the lesser crime of harassment. Id. at 580-81, 14 P.3d 752.

The present case is distinguishable from Bui. Here, there is no evidence that supports an alternative uncharged crime. The record is clear in establishing that Berube and Nielsen participated in a pattern of assault and/or torture toward the child victim.
[6] Pursuant to Laws of 2001, ch. 10, § 6, RCW 9.94A.120 has been recodified as RCW 9.94A.535, which has been amended by Laws of 2003, ch. 267.