# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50590-8-II |
| Respondent, | |
| v. | |
| WESLEY WARD REICHMAND, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Wesley Ward Reichmand appeals his convictions for burglary in the first degree, burglary in the second degree, and theft of a firearm. The convictions relate to the burglaries of three storage units at Fife You Store It (YSI), one of which contained firearms. Reichmand argues that insufficient evidence supports all of his convictions and that he received ineffective assistance of counsel. Reichmand makes other assertions in a statement of additional grounds (SAG). We affirm.

## FACTS

In May 2016, Reichmand met Krystal Zinn when he bought bolt cutters. Sometime thereafter, Reichmand and his girlfriend, Tonya Routt, moved into a shed on Zinn's property.

In August, Reichmand rented unit B-79 at YSI. Reichmand was listed as the lessee, and Zinn had authorized access to the unit. They intended to use the unit to temporarily store stolen property from other units and to store belongings from Zinn's house, which was being foreclosed. Within days of entering the lease, Reichmand, Zinn, and Routt broke into three separate storage units, units B-77, B-81, and B-83.

A six-foot-high fence surrounded YSI. YSI had three gates, two of which were permanently locked, and one of which required an access code to open. Reichmand and Zinn received a unique code to be used for the ingress and egress of YSI. YSI maintained an activity log of all entries and exits.

During a security inspection, the manager of YSI, Patricia Carter, noticed signs of forced entry on one of the units. She noticed that the hasp on unit B-81 had been cut, but the lock remained on the door. Carter checked the gate-activity log and noted that Vaneza Tena, the lessee of unit B-81, had not entered the facility recently. Carter did see that Reichmand's code had been entered ten times in the preceding three days.

Carter then examined the security footage surrounding unit B-81 and observed a white car near units B-81 and B-79. She recognized the people who exited the vehicle as Reichmand and Zinn. Based on the activity log and security footage, she suspected that Reichmand and Zinn had broken into unit B-81, and thus, she deactivated their access code.

The same day, Carter saw the white car from the security footage appear at the entrance gate. Because Reichmand's code had been deactivated, Carter opened the gate and immediately called the police.

Fife Police Officer Daniel Goff arrived, approached the vehicle, and identified Zinn as the driver. The back seat contained numerous household items, including a map tube, suitcases, and ceramic figurines. Zinn made incriminating statements, and then Goff arrested her. On Zinn's person, Goff found a suspected meth pipe and a piece of paper with "P226" written on it, which Goff recognized as the model number for a type of pistol. Goff and other officers noticed that, in addition to unit B-81, units B-77 and B-83 also showed signs of forced entry.

The police obtained a search warrant for Zinn's car and unit B-79. Zinn's car contained many items stolen from other units. The storage unit contained numerous stolen items, including a gun safe. The gun safe appeared "pried open," and it contained no firearms. 2 Report of Proceedings (RP) at 255; 3 RP at 408.

The police contacted the lessees of the units that they suspected had been burglarized. Briallen Hopper leased unit B-77. She noted that many items were missing.

Vanessa Tena had stored clothing, a washer and dryer, two sets of tires, books, and a space heater in unit B-81. The unit was empty. Tena's missing items were never recovered.

Carlos Andres leased unit B-83. He discovered many items missing from his unit, including a gun safe that he stored for his coworker, Danielle Anderson. According to Anderson, the safe contained approximately seven or eight operable firearms. The police found some of Andres's items in unit B-79, including the gun safe. Anderson's firearms were never recovered.

The State charged Reichmand with burglary in the first degree, theft of a firearm, two counts of burglary in the second degree, and unlawful possession of a firearm in the first degree.

Reichmand's trial began in June 2017. Zinn pleaded guilty to theft of a firearm and burglary, and testified as follows. Reichmand came up with the plan to break into the storage units. Reichmand, Zinn, and Routt used bolt cutters to pry open the locks on each unit. Because YSI employees frequently inspected the facility, after they broke open and stole from a unit, Reichmand, Zinn, or Routt put on a different lock so the unit would not look disturbed. She and Reichmand stored stolen property in their unit. Zinn, Reichmand, and Routt decided as a group what to do with each stolen item. In one unit they found a gun safe, which they took to their storage unit where Reichmand pried it open with a crowbar. Zinn transported the firearms to her house, where Reichmand and Routt stored them in the shed where they lived. Although she did

not know with certainty what happened to all of the firearms, Zinn had personal knowledge that Reichmand traded some of the firearms for methamphetamine. Zinn also reviewed YSI's security footage and identified herself, Reichmand, and Routt in it as well as her white car.

The State also called Goff, Andres, Anderson, Tena, Hopper, Carter, and Jeffrey Nolta, the Fife Police Department detective assigned to the case. Reichmand did not call any witnesses. Additional evidence at trial included YSI's surveillance footage, which showed Reichmand active on YSI's property, moving between storage units and Zinn's car. It also showed Reichmand and others loading a washer and dryer into a U-Haul; Reichmand opening, entering, and then closing multiple storage units; and Reichmand standing next to closed storage units appearing to cut locks.

The court instructed the jury on accomplice liability for all charges except the unlawful possession of a firearm charge.

The jury found Reichmand guilty on all counts except for unlawful possession of a firearm in the first degree. Reichmand appeals.

## ANALYSIS

I.    SUFFICIENCY OF THE EVIDENCE

A.    Legal Principles

In a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted

4

most strongly against the defendant.'" *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

A person is an accomplice of another if, "[w]ith knowledge that it will promote or facilitate the commission of the crime, he . . . [s]olicits, commands, encourages, or requests such other person to commit [the crime,] or . . . [a]ides or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3)(a). "[A]n accomplice need not be aware of the exact elements of the crime. As long as the defendant engaged in conduct that is 'the crime,' the defendant may be found guilty." *State v. Berube*, 150 Wn.2d 498, 508-09, 79 P.3d 1144 (2003) (citation omitted) (quoting *State v. Roberts*, 142 Wn.2d 471, 512, 14 P.3d 713 (2000)).

B.      Burglary in the First Degree

Reichmand argues insufficient evidence supports his conviction for burglary in the first degree because he was never "armed with a deadly weapon" while in "immediate flight" from the crime scene. Br. of Appellant at 15. He argues that while the firearms were in the gun safe he was not armed, and by the time he pried open the gun safe and became armed, he was no longer in "immediate flight." Br. of Appellant at 18. We disagree.[1]

The court instructed the jury on burglary in the first degree as follows:

> (1) That on or about the period between the 21st day of August, and the 22nd day of August, 2016, the defendant or an accomplice entered or remained unlawfully in a building;
> (2) That the entering or remaining was with intent to commit a crime against a person or property therein;

---

[1] Reichmand waived his alternative argument that, even if the guns were accessible, there was no "'nexus between the defendant, the crime, and the weapon'" because the State did not establish his "'intent or willingness to use the weapon.'" Reply Br. of Appellant at 9 (quoting *State v. Brown*, 162 Wn.2d 422, 431, 173 P.3d 245 (2007)); *see* RAP 10.3(c). Reichmand only raises the issue in his reply brief and in his opening brief concedes that "there is no need to analyze the willingness or present ability to use the firearm." Br. of Appellant at 17.

(3) That in so entering or while in the building or in immediate flight from the building the defendant or an accomplice in the crime charged was armed with a deadly weapon; and

(4) That any of these acts occurred in the State of Washington.

Clerk's Papers (CP) at 125. This instruction is in accord with RCW 9A.52.020.

A defendant is "armed with a deadly weapon" if it "is easily accessible and readily available for use, either for offensive or defensive purposes," during the commission of the crime.[2] *State v. Valdobinos*, 122 Wn.2d 270, 282, 858 P.2d 199 (1993).

"Immediate flight" is not statutorily defined but is an expression of common understanding "to be given meaning from [its] common usage." *State v. Brown*, 132 Wn.2d 529, 611, 940 P.2d 546 (1997). To be "immediate" an event must satisfy both spatial and temporal bounds, i.e., it must be nearby and occur shortly after the triggering event. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1129 (2002); *cf. State v. Leech*, 114 Wn.2d 700, 706, 790 P.2d 160 (1990) (requiring a close proximity of time and distance for felony homicide).

Drawing all inferences in favor of the State, a rational fact finder could have inferred that immediately upon bringing the safe back to his unit, Reichmand pried it open. The State presented evidence that Reichmand stole a locked gun safe, took it back to his unit a short distance away, and pried it open with a crowbar. Thus, Reichmand became armed with a deadly weapon when he pried open the gun safe in his storage unit and removed the guns. YSI's surveillance footage showed Reichmand active on YSI's property, moving between units and Zinn's car. A reasonable inference from that evidence is that Reichmand took the safe from unit B-83 to his unit, pried it open, and removed the guns. Zinn testified that she transported the firearms in her car. From this testimony a juror could reasonably infer that Reichmand opened the gun safe after stealing it and

---

[2] The court did not instruct the jury on what constitutes "armed with a deadly weapon." Neither party proposed such an instruction.

6

thus became armed in immediate flight from the burglary of the storage unit.  Therefore, sufficient evidence supports this conviction.

        C.      Burglary in the Second Degree

Reichmand argues that insufficient evidence supports his convictions for burglary in the second degree because the State failed to prove that he entered or remained in any of the three storage units.  He argues that although "Zinn accused Mr. Reichmand of participating in the burglaries, . . . no physical evidence supports her contention."  Br. of Appellant at 20.  We disagree.[3]

The court instructed the jury on burglary in the second degree as follows:

> (1) That on or about the period between the 21st day of August and the 22nd day of August, 2016, the defendant or an accomplice entered or remained unlawfully in a building;
> (2) That the entering or remaining was with intent to commit a crime against a person or property therein; and
> (3) That this act occurred in the State of Washington.

CP at 139-40.  This instruction is in accord with RCW 9A.52.030.  The court also instructed the jury: "A person enters or remains unlawfully in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain."  CP at 128; *see* RCW 9A.52.010(2).

Neither party requested 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 6.05, at 197 (4th ed. 2016) (WPIC), which says that an accomplice's testimony should be given careful examination in light of other evidence.  "You should not find the defendant guilty upon such testimony alone unless, after carefully considering the testimony,

---

[3] Reichmand makes identical arguments in his SAG.  We do not consider those arguments independently because they duplicate those made by his counsel.  *See State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).

you are satisfied beyond a reasonable doubt of its truth." WPIC 6.05. This instruction has been approved by the courts. *State v. Statler*, 160 Wn. App. 622, 635, 248 P.3d 165 (2011). In this case, sufficient evidence corroborating Zinn's testimony exists.

Drawing all inferences in favor of the State, a rational fact finder could have found Reichmand guilty either as a principal or an accomplice. Zinn testified that she and Reichmand rented unit B-79 together to break into other storage units and steal property, and her testimony is corroborated by the signed rental agreement listing Reichmand as the lessee. She said that the idea of the burglaries originated with Reichmand. Zinn described how she and Reichmand broke into the units and how they attempted to conceal the burglaries, and her testimony was corroborated because her description matched the conditions of units B-77, B-81, and B-83. Zinn testified that the surveillance video showed Reichmand on the premises, and the video showed the person identified as Reichmand appearing to cut locks and disappearing behind opened doors. Zinn testified that the burglarized units were on either side of her and Reichmand's unit, and her testimony was corroborated by Carter, YSI's manager, who testified that units B-77, B-79, B-81, and B-83 were next to each other. Zinn identified items she and Reichmand stole from each of the three units, and her testimony was corroborated by the owners of the property who testified about the same missing items. Finally, Zinn testified that she, Reichmand, and Routt made all the decisions regarding what to do with the stolen property together. Sufficient evidence supports Reichmand's convictions for burglary in the second degree.

D.      Theft of a Firearm

Reichmand argues that insufficient evidence supports his conviction for theft of a firearm because "there was no direct evidence," only Zinn's uncorroborated testimony. Br. of Appellant at 24. We again disagree. Zinn's testimony was sufficiently corroborated.

8

The court instructed the jury on theft of a firearm as follows:

> (1) That on or about the period between the 21st day of August and the 22nd day of August, 2016 the defendant or an accomplice wrongfully obtained or exerted unauthorized control over a firearm belonging to another; and
> (2) That the defendant or accomplice intended to deprive the other person of the firearm; and
> (3) That this act occurred in the State of Washington.

CP at 134. This instruction is in accord with RCW 9A.56.300.

In addition to the evidence discussed above, Anderson corroborated Zinn's testimony that there were multiple rifles and firearms in the safe. Goff and Nolta corroborate Zinn's testimony that Reichmand pried open the safe with a crowbar. And the "P226" note found on Zinn when she was arrested, a description matching a type of firearm Anderson alleged went missing, further ties Zinn and Reichmand to the theft of Anderson's firearms. Finally, Zinn testified that Reichmand took full control of the firearms once at the shed where he lived and that he exchanged at least some of those firearms for methamphetamine. Accordingly, sufficient evidence supports Reichmand's theft of a firearm conviction.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

Reichmand argues that he received ineffective assistance of counsel because his counsel failed to object to Carter's improper opinion evidence. He argues that Carter made an improper comment on the evidence when she identified Reichmand in the surveillance video and stated that the video very clearly depicted Reichmand. We disagree.

The Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

9

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. Representation is deficient if, after considering all the circumstances, the performance falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 446 U.S. at 688). If either prong is not satisfied, the defendant's claim fails. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

To show prejudice, Reichmand must show there is a reasonable probability that, had his counsel objected to Carter's identification of Reichmand in the video and the court sustained the objection, the jury would have found him not guilty. *See Grier*, 171 Wn.2d at 34.

Reichmand cannot show prejudice because Zinn also identified him in the video. Zinn's testimony identified Reichmand on three different days, while the challenged portion of Carter's testimony merely identified Reichmand while she described the actions she took when she recognized signs of burglary. Thus, because independent testimony identified Reichmand in the surveillance video, Reichmand has not shown a reasonable probability that, but for Carter's comment, the jury would have found him not guilty. Because Reichmand has not met his burden to prove prejudice, his ineffective assistance of counsel claim fails.

III.    ZINN'S TESTIMONY

In his SAG, Reichmand asserts that the trial court erred in permitting Zinn to identify him in the surveillance video. Reichmand also argues that Zinn's testimony as a whole impermissibly attempted to shift Blame towards him and that it should not have been admitted.

Reichmand waived these arguments under ER 103 and RAP 2.5(a) because he did not object to Zinn's identification or testimony at trial.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, P.J.

Johanson, J.