[No. 39212-3-I. Division One. September 14, 1998.]

STATE FARM FIRE AND CASUALTY COMPANY, *Respondent*, v. QUANG HUYNH, ET AL., *Defendants*, EDWIN KINIRY, D.C., *Appellant*.

*Howard M. Goodfriend* of *Edwards, Sieh, Smith & Good-friend, P.S.*, for appellant.

*William R. Hickman* of *Reed McClure*, for respondent.

KENNEDY, C.J. — State Farm Fire and Casualty Company filed fraud and Consumer Protection Act claims against Edwin Kiniry, D.C., seeking to recover financial losses it suffered from false injury reports and phony billings that Kiniry submitted to State Farm on behalf of State Farm insureds, who had staged an auto accident. After a jury verdict for State Farm, the trial court entered judgment against Kiniry and awarded damages to State Farm. It then denied Kiniry's motions for reconsideration, judgment as a matter of law, and a new trial.

Kiniry appeals, contending that State Farm did not have standing to sue him under the Consumer Protection Act. In addition, he maintains that the trial court erred by admitting one witness's invocation of her Fifth Amendment privilege, and another witness's opinion that more than 20 of Kiniry's reports and billings contained unusual similarities. Kiniry also argues that the evidence is insufficient to support the jury's verdicts that he committed fraud and violated the Consumer Protection Act. Finding these contentions to be without merit, we affirm.

FACTS

In January 1993, Edwin Kiniry, a chiropractor, treated two persons who claimed they had been injured in a car accident two days earlier. In his ensuing reports, Kiniry reported objective findings that he stated strongly suggested injuries that appeared to be a direct consequence of the automobile accident. He billed both patients for these services. Approximately six months later, with Kiniry's knowledge, these bills and Kiniry's injury reports were submitted to State Farm for payment. After State Farm completed its investigation of the incident, it concluded

that the "accident" had been staged[1] and refused to pay Kiniry's bills.

State Farm filed fraud and Consumer Protection Act (CPA) claims against Kiniry.[2] After a nine-day trial, a jury determined that Kiniry had committed fraud and violated the CPA, causing damage to State Farm. The trial court entered judgment against Kiniry and awarded State Farm $24,314.03 on the fraud claim and $10,000 on the CPA claim. It also ordered Kiniry to pay State Farm's reasonable attorney fees, under the CPA, in the amount of $35,000. Kiniry moved for reconsideration, judgment as a matter of law, and a new trial, but the trial court denied these motions. Kiniry appeals.

## DISCUSSION
### I. Standing

■■ "The question of whether an act or practice is actionable under the Consumer Protection Act is a question of law." *Dombrosky v. Farmers Ins. Co.*, 84 Wn. App. 245, 260, 928 P.2d 1127, *review denied*, 131 Wn.2d 1018, 936 P.2d 417 (1997). Accordingly, we review this issue de novo. *State v. McCormack*, 117 Wn.2d 141, 143, 812 P.2d 483 (1991). The CPA is to be liberally construed to serve its purpose, i.e., to protect the public, and foster fair and honest competition. RCW 19.86.920. This court has held that entrepreneurial aspects of medical practice, i.e., acts done for the purpose of increasing profits, are within the sphere of trade, are commerce, and are subject to the CPA. *Thomas v. Wilfac, Inc.*, 65 Wn. App. 255, 265, 828 P.2d 597 (1992); *Quimby v. Fine*, 45 Wn. App. 175, 181-82, 724 P.2d 403 (1986). In *Blewett v. Abbott Lab.*, 86 Wn. App. 782, 785-89, 938 P.2d 842 (1997), *review denied*, 133 Wn.2d 1029 (1998), we held that indirect purchasers of goods do not have standing to bring an action alleging price-fixing in violation

---

[1]Kiniry does not dispute the fact that the accident was staged.

[2]State Farm filed additional actions against Kiniry and the patients he treated that are not relevant to this appeal.

of the CPA. Whether our holding that only direct purchasers have standing extends to suits alleging CPA violations that are not in the nature of an antitrust violation need not be decided in the present case, because even if it does, State Farm was the "direct purchaser" of Kiniry's services for the benefit of its insureds. And the subject of this action is Kiniry's false billings and reports that were submitted to State Farm for the purpose of increasing profits. Accordingly, Kiniry's false billings and reports are subject to the CPA.

■ Kiniry contends that State Farm did not have standing to sue him because the CPA was designed to protect consumers, not insurance companies. But an injured party need not be a consumer of goods or services to assert a cause of action under the CPA. *Physicians Ins. Exch. & Assoc. v. Fisons Corp.*, 122 Wn.2d 299, 313, 858 P.2d 1054 (1993). In *Fisons*, a doctor sued a drug company for injuries he sustained after his patient was injured by a prescription drug that the doctor had obtained from that drug company. *Id.* at 306. Our Supreme Court noted that a passenger in an auto accident had standing to bring a CPA claim against an insurance company even though that person had no consumer relationship with the company, and then held that the doctor had standing to sue the drug company. *Id.* at 312 (citing *Escalante v. Sentry Ins. Co.*, 49 Wn. App. 375, 387, 743 P.2d 832 (1987)). *But see Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 394, 715 P.2d 1133 (1986) (holding that only the insured has standing to bring per se CPA actions for breach of an insurer's duty of good faith).

■ In support of its conclusion, the *Fisons* court examined the unique relationship between a drug manufacturer and a doctor. *Fisons*, 122 Wn.2d at 313. Here, the relationship between a doctor and his patients' insurer is also unique. In *Fisons*, the court noted that the drug company gives drug warnings to the doctor, not the patient, and targets its marketing efforts toward the doctor, not the patient. *Id.* Then, it observed that the doctor is a logical person to be the private attorney general because he stands

in the shoes of the ordinary consumer of the drug. *Id.* Similarly, a doctor submits patients' bills to an insurance company for payment. When these bills are fraudulent, the costs are passed on to consumers, who are forced to pay higher premiums. Therefore, following the intermediary doctrine explained in *Fisons*, an insurance company is a logical party to be the private attorney general because it stands in the shoes of its premium-paying consumers who are affected by false billings from doctors.

Kiniry argues that if we allow an insurance company to sue a doctor under the CPA, doctors will begin to question patients' descriptions of symptoms and—because of their fear of liability under the CPA—give clouded diagnoses. He therefore contends that doctor-patient relationships, particularly those involving treatment of soft-tissue injuries and pain that cannot be explained by objective findings, would be adversely affected.

Doctors who *falsely* report objective findings and bill for services that were never provided *should* fear liability for fraud and under the CPA. But the mere reporting and treatment of subjective symptoms described by a patient does not constitute fraud or a violation of the CPA. We note a vast difference between fraud and good faith medical response to patients' subjective complaints. Although medical science cannot yet explain chronic pain syndrome, for example, specialized pain clinics are nevertheless able to successfully treat chronic pain that cannot be explained by objective findings. *See generally Integration of Behavioral and Relaxation Approaches Into the Treatment of Chronic Pain and Insomnia*, 276 JAMA 313 (1996) (describing effective methods of reducing chronic pain in various medical conditions).

The insurance code was amended in 1995 to expressly require health care providers to preserve "inviolate the integrity of insurance." RCW 48.01.030; LAWS OF 1995, ch. 285, § 16, at 1157-58. That statute also provides that "all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters."

RCW 48.01.030. We do not believe that the CPA or the public policy pronouncements contained in RCW 48.01.030 or any portion of this opinion should cause health care providers who in good faith treat patients' subjective symptoms to fear litigation. In addition, fraud must be proved by clear, cogent, and convincing evidence, which in itself provides protection to doctors who treat subjective symptoms in good faith.

We fully agree with Kiniry that health care providers are under no duty to independently investigate whether patients who claim to have been in an accident actually were. In this case, some of the "victims" of the staged accident were treated by other chiropractors who were not sued, presumably because their reports and billings submitted in support of those patients' claims contained no evidence of fraud on the part of the chiropractor.

At oral argument for this appeal, Kiniry argued that cross-claims against doctors could become a routine practice by attorneys representing insurers who hope to utilize discovery to indiscriminately perform audits of medical records of doctors who routinely treat soft-tissue injuries. But the record reflects that insurers already routinely hire auditors to examine injury reports and treatment records. Moreover, the trial court has adequate means of sanctioning parties and attorneys who file claims without a legal or factual basis under CR 11 and by ordering the payment of fees under RCW 4.84.185 if a lawsuit is frivolous. This opinion is not an invitation for wholesale cross-claims against the health care profession. Any such response would be swiftly dealt with under CR 11 and RCW 4.84.185. Contrary to Kiniry's contentions, doctors who honestly report objective findings and bill only for services that are provided have nothing to fear as a result of this opinion.

In sum, in accord with the broad legislative intent to protect the public and foster fair and honest competition,

we hold that State Farm has standing to sue Kiniry under the CPA.

## II. Fifth Amendment Privilege

During a deposition before trial, Theresa Le, Kiniry's wife and office manager, invoked her Fifth Amendment privilege when she was asked if Kiniry's clinic paid lawyers for referrals. Kiniry moved in limine to prohibit State Farm from asking this or any other question as to which Le invoked this privilege. The trial court denied the motion, ruling that State Farm "will be entitled to ask Theresa Le . . . about the billing practices at Emerald City even if in her deposition she asserted the Fifth Amendment in response to those questions." Report of Proceedings at 788-89.

During trial, State Farm again asked Le if Kiniry's clinic paid lawyers for referrals. This time, Le responded, "No." *Id.* at 1351. Then, counsel for State Farm handed her her deposition testimony, repeated the question, and asked, "[A]t that time you asserted the privilege under the Fifth Amendment; is that correct?" *Id.* at 1352. Le testified, "Yes." *Id.*

■ On appeal, Kiniry contends that the trial court erred by denying his motion in limine to exclude Le's invocation of the Fifth Amendment. But our Supreme Court has held, "When a witness in a civil suit refuses to answer a question on the ground that his answer might tend to incriminate him, . . . the trier of facts in a civil case is entitled to draw an inference from his refusal to so testify." *Ikeda v. Curtis*, 43 Wn.2d 449, 458, 261 P.2d 684 (1953). In addition, whether Kiniry's clinic paid lawyers for referrals was relevant to the "occurring in trade or commerce," "public interest," and "deceptive act or practice" elements of the CPA claim. Because the jury might draw an inference from Le's invocation of the Fifth Amendment and because the information sought was relevant, the trial court properly

denied Kiniry's motion to exclude Le's invocation of the privilege during her deposition testimony.

### III. Testimony of the Nurse Auditor/Medical-Legal Consultant

Kiniry contends that the trial court erred by admitting the testimony of Linda Hunger, a nurse auditor/ medical-legal consultant who evaluated Kiniry's medical reports and billings, and by admitting an exhibit containing the files she reviewed and the reports she compiled. "The admission or refusal of evidence lies largely within the sound discretion of the trial court and will only be reversed upon a showing of abuse of that discretion." *Hume v. American Disposal Co.*, 124 Wn.2d 656, 666, 880 P.2d 988 (1994) (citation omitted).

Corvel Corporation, Hunger's employer, is a national provider of managed care services and is often hired by insurance companies to conduct audits of medical reports and billings. Auditors working for Corvel, including Hunger, identify health care professionals and contact the appropriate licensing departments to verify that each professional is licensed to provide care. Then the auditors analyze the bills and records to determine whether the provider is performing services within the scope of his or her license, and whether the bills submitted to the insurance company reflect the services received by the patient.

Here, State Farm hired Hunger to audit Kiniry's medical records. At trial, Hunger testified that she detected a pattern in the level of service, the codes, the diagnoses rendered, and treatment parameters in Kiniry's reports and bills. She also stated that, after reviewing 20 of Kiniry's files—in addition to the files involved in this case— she noted striking similarities in treatments and billing codes despite variations in injuries and types of auto accident that the charts indicated had occurred, e.g., rear-end, head-on, or T-bone. In Hunger's opinion, this was significant because, from her experience, she expected more variation in the symptoms reported and treatment given

based upon the kind of accident producing the alleged injury.

■ Kiniry contends this evidence was irrelevant and unfairly prejudicial. Because Hunger's observations of a pattern in Kiniry's medical reports and billings had a tendency to make the "deceptive act or practice" and "public interest impact" elements of the CPA claim and the elements of fraud more probable, her testimony was relevant. *See* ER 401. Moreover, the jury was aware that Hunger was hired to look for improprieties in medical billings for State Farm, and that she did not know how any of the injuries in the reports occurred. Thus, in light of the entire record, the probative value of this testimony outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* ER 403.

■ Kiniry also contends that admission of this evidence was improper under ER 404(b).[3] ER 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. But this rule allows the admission of such evidence for other purposes, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Kiniry moved in limine to exclude evidence of his prior bad acts or misconduct. The trial court denied this motion, concluding that this evidence suggests that he acted intentionally and did not make an inadvertent mistake in the present case. Because intent and absence of mistake are permissive purposes for admission of this evidence under ER 404(b), the trial court properly denied Kiniry's motion in limine.

### IV. Sufficiency of the Evidence

■ This court reviews a motion for judgment as a mat-

---

[3]In addition, Kiniry argues that Hunger's testimony was improper under ER 702 because Hunger is a registered nurse and not a chiropractor. But Kiniry fails to provide citation to the record to indicate the specific testimony to which he objects on this ground. Moreover, the record reflects that Hunger presented an opinion to the jury only on subjects within her expertise in accordance with ER 702. Accordingly, we reject this argument.

ter of law under CR 50(b) under the same standard as the trial court. *Stiley v. Block*, 130 Wn.2d 486, 504, 925 P.2d 194 (1996). The inquiry is limited to whether, after viewing the material evidence in the light most favorable to the nonmoving party, the evidence or a reasonable inference therefrom is sufficient to sustain the jury's verdict as a matter of law. *Id.* at 504-05; *Martini v. Boeing Co.*, 88 Wn. App. 442, 450-51, 945 P.2d 248 (1997), *review granted*, 134 Wn.2d 1019 (1998). "If there is any justifiable evidence upon which reasonable minds might reach conclusions that sustain the verdict, the question is for the jury." *Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 126 Wn.2d 50, 98, 882 P.2d 703 (1994), 891 P.2d 718 (1995) (citation omitted).

A. Fraud

 Fraud must be proven by clear, cogent and convincing evidence:

> What constitutes clear, cogent, and convincing proof necessarily depends upon the character and extent of the evidence considered, viewed in connection with surrounding facts and circumstances. Whether the evidence in a given case meets the standard of persuasion, designated as clear, cogent, and convincing, necessarily requires a process of weighing, comparing, testing, and evaluating—a function best performed by the trier of the fact, who usually has the advantage of actually hearing and seeing the parties and the witnesses, and whose right and duty it is to observe their attitude and demeanor.
>
> The appellate function should, and does, begin and end with ascertaining whether or not there is substantial evidence supporting the facts as found.

*Bland v. Mentor*, 63 Wn.2d 150, 154, 385 P.2d 727 (1963) (citation omitted). Thus, the clear, cogent and convincing burden of proof contains two elements: the amount of evidence that is prerequisite to submitting the question to the trier of fact (sometimes referred to as the burden of production)—which need be met only by substantial evidence—and the burden of persuasion, as to which the trier

of fact (not the appellate court) must be persuaded that the fact in issue is highly probable. *Colonial Imports, Inc. v. Carlton N.W., Inc.*, 121 Wn.2d 726, 734-35, 853 P.2d 913 (1993).

Here, the jury returned a verdict that Kiniry committed fraud, causing damage to State Farm. The jury instructions on fraud, which are not challenged on appeal, required the jury to find nine elements by clear, cogent, and convincing evidence. On appeal, Kiniry contends that the evidence presented at trial was not sufficient to support the jury's verdict. Specifically, he challenges the evidence presented in support of three elements of fraud: (1) that Kiniry made a false representation; (2) that State Farm relied upon the truth of the representation; and (3) that State Farm suffered damage as a result. Accordingly, we must determine whether substantial evidence supports these three elements.

1. False Representation

Two days after the staged accident, Kiniry examined, treated, and billed two of the "victims." In one patient's report, Kiniry concluded, "In consideration of background history relating to the onset of symptoms, physical examination findings, radiological findings and thorough orthopedic and neurological examination, it seems apparent that the injuries sustained by [this patient] were a direct consequence of the automobile accident which occurred on 1/10/93." Ex. 15, at 3-4. In his report for another patient, Kiniry stated, "The injuries sustained and demonstrated by [this patient] appear to be a direct consequence of the automobile accident which occurred on 1/10/93, as correlation with background history, and examination findings would strongly suggest." Ex. 10, at 4. In addition, Kiniry purportedly observed a scalp injury on one patient's head and mild swelling and moderate tenderness that were not observed by the emergency room physicians who treated her immediately after the collision. Kiniry's reports indicated that he also felt bilateral muscle spasms on both patients. Thus, Kiniry reported objective findings in support of the patients' subjective complaints.

At trial, a neurologist explained that muscle spasms are detected by comparing one side of a patient's spine to the other, and that bilateral spasms—which are identical on both sides—are difficult to diagnose and very unusual. The neurologist also stated that such spasms cannot be faked by a patient. In addition, Kiniry's patient sign-in sheets at his clinic contained signatures for these two patients that were inconsistent and, in one instance, misspelled. Furthermore, the billing statements for 20 of his patients contained no variations in treatment, despite varied types of injury. After viewing these documents, the jury could have independently made their own comparison and determined that Kiniry's reports and billings were false. *State v. Haislip*, 77 Wn.2d 838, 841, 467 P.2d 284 (1970). Thus, the record contains substantial evidence upon which reasonable minds might conclude that Kiniry made a false representation.

2. State Farm Relied Upon Representation

David McKeehen, the representative from State Farm's investigative unit who handled this case, testified that he received and read Kiniry's reports and bills on July 2, 1993. Although State Farm suspected that the accident was staged before it received Kiniry's reports and billings, it was obliged to continue to investigate the claims of injury under the insurance code, RCW 48.01.030, in accordance with the good faith requirement. McKeehen testified that State Farm's investigation was not concluded until December 1993 or January 1994.

Thus, it is reasonable that the jury independently inferred that Kiniry's reports and billings were considered as part of State Farm's investigation. Viewing this evidence and its reasonable inferences in the light most favorable to State Farm, we conclude that it is sufficient to sustain the jury's verdict, i.e., that State Farm presented substantial evidence that it relied upon the truth of Kiniry's false representations.

3. Damage

Substantial evidence also supports the jury's finding that State Farm suffered damage as a result of the false

representations. After McKeehen received and read Kiniry's false reports and billings, State Farm continued to investigate this claim for approximately six months. During this time, State Farm incurred expenses for experts, interpreters, transcribers, attorneys, and its employees. A reasonable juror could conclude that if Kiniry had not submitted claims to State Farm, it could likely have settled the claims earlier than December 1993 or January 1994. The costs incurred in reviewing and investigating these fraudulent documents therefore constitute damages that were suffered by State Farm.

In sum, the record contains substantial evidence upon which reasonable minds might conclude that Kiniry made a false representation upon which State Farm relied causing damage. Accordingly, sufficient evidence was presented at trial to sustain a verdict by clear, cogent, and convincing evidence for State Farm on the fraud claim.

B. Consumer Protection Act Claim

This court reviews State Farm's motion for judgment as a matter of law on the CPA claim under the same standard as the trial court, i.e., whether substantial evidence supports the verdict. *Stiley*, 130 Wn.2d at 504.

The elements of a private claim under the CPA are: unfair or deceptive act or practice; occurring in trade or commerce; impacts public interest; and causes injury to plaintiff in his business or property. *Leingang v. Pierce County Med. Bureau*, 131 Wn.2d 133, 149, 930 P.2d 288 (1997); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-93, 719 P.2d 531 (1986); RCW 19.86.020. Here, Kiniry challenges all the elements of the CPA except the "impacts public interest" element.

State Farm presented two theories at trial in support of the unfair or deceptive act or practice in trade or commerce elements. It alleged that Kiniry prepared false injury reports that he knew would be provided to State Farm. And, in the alternative, it maintained that he submitted billing statements to State Farm with the intention the bills be paid by State Farm for services that were not

provided. The jury returned a general verdict that Kiniry violated the CPA, causing damage to State Farm. Kiniry contends that the evidence presented at trial was not sufficient to support a finding that Kiniry violated the CPA under either the false injury reports theory or the phony billing statements theory.

### 1. False Injury Reports

Kiniry argues that his diagnosis and treatment recommendations are exempt from the CPA because they do not concern the entrepreneurial aspects of his practice. But this court has explained that acts done for the purpose of increasing profits are within the sphere of trade, are commerce, and are subject to the CPA. *Thomas v. Wilfac, Inc.*, 65 Wn. App. 255, 265, 828 P.2d 597 (1992); *Quimby v. Fine*, 45 Wn. App. 175, 181-82, 724 P.2d 403 (1986). Kiniry offers no other purpose for the preparing of false reports of injuries other than to increase his profits. Thus, the record contains substantial evidence upon which reasonable minds might conclude by a preponderance of evidence that Kiniry's unfair act occurred in trade or commerce.

To prove the unfair or deceptive act or practice element, State Farm presented the testimony of Hunger, the nurse auditor, and the neurologist. Hunger's testimony that there were striking similarities in treatments allegedly given to 20 patients and the two "victims" notwithstanding the type of auto accident the charts indicated had occurred, along with the testimony of the neurologist that detection of bilateral spasms is difficult and unusual constitutes substantial evidence in support of State Farm's theory that Kiniry committed an unfair or deceptive act by preparing false injury reports.

### 2. Phony Billing Statements

State Farm argued in the alternative that Kiniry's billings were phony, i.e., that he billed for services that he did not perform on the two "victims" of the staged accident. In support of this theory, State Farm presented evidence that the treatment records for the two "victims" and the billing records did not match.

Kiniry testified at a deposition[4] that his staff prepared his billings from his treatment records. Hunger stated that she compared the billing statements with the treatment records to determine whether they matched, i.e., she audited the records. She testified, "I don't see how someone could look at those treatment notes and identify that any of these services [i.e., chiropractic adjustments and other forms of treatment billed for specific dates] were provided." Report of Proceedings at 1211. With respect to the two "victims," Hunger pointed out several specific examples, including the lack of progress reports and manipulative therapy level indicators. She also testified that this was consistently true with respect to the files she examined for 20 other patients. That is, there was very little variation in any of the documents she audited for those 20 patients and the two "victims." This constitutes substantial evidence in support of State Farm's phony billing theory to support a finding that Kiniry committed an unfair or deceptive act or practice in trade or commerce.

The final element of the CPA claim is whether Kiniry's false reports and phony billing statements caused injury to State Farm in its business or property. State Farm incurred expenses for experts, interpreters, transcribers, attorneys, and its own employees during its investigation of Kiniry's reports and billing statements. Thus, the evidence supports a verdict by a preponderance of the evidence that Kiniry violated the CPA by submitting either the false reports, the phony billing statements, or both.

Viewing the material evidence in the light most favorable to State Farm, we conclude that it is sufficient to sustain the jury's verdicts on the fraud and CPA claims. Accordingly, we conclude that the trial court properly denied Kiniry's CR 50(b) motion and did not abuse its discretion in denying his motion for a new trial. *State v. Balisok*, 123 Wn.2d 114, 117, 866 P.2d 631 (1994); CR 59.

In sum, State Farm had standing to sue Kiniry under the

[4]During Hunger's testimony, a volume of Kiniry's deposition was published and read to the jury.

Consumer Protection Act. The trial court did not abuse its discretion in admitting Le's invocation of her Fifth Amendment privilege in response to a relevant question or in admitting evidence of Kiniry's other acts that were relevant to prove intent and mistake. And sufficient evidence was presented at trial to sustain a verdict for State Farm by clear, cogent, and convincing evidence on the fraud claim and by a preponderance of the evidence on the CPA claim. Accordingly, we affirm.

WEBSTER and BECKER, JJ., concur.