FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 FEB 26 AM 8: 40

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DENNIS SCHMIDT and WENDY
DEMETER, husband and wife,

    Appellants/Cross Respondents,

v.

AMERICAN COMMERCE INSURANCE
COMPANY, a foreign corporation,

    Respondent/Cross Appellant,

MAPFRE USA, a foreign corporation; M&T
BANK CORPORATION and any
assignees or successors; FIRST
TENNESSEE BANK NATIONAL
ASSOCIATION and any assignees or
successors; AUTOMOBILE CLUB
INSURANCE AGENCY d/b/a AAA
INSURANCE AGENCY, a Washington
corporation,

    Defendants.

No. 74369-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 26, 2018

APPELWICK, J. — Schmidt's Vashon home burned down. Schmidt filed suit against insurer, ACIC, which refused to cover his loss claim. The jury found that Schmidt intentionally set fire to his house. Schmidt appeals. ACIC cross appeals.

## FACTS

After landslides, Dennis Schmidt and Wendy Demeter (hereafter Schmidt[1]) replaced the foundation and rebuilt their home. Sheryl Lux of King County Code

---

[1] In the context of the insurance contract, the use of "Schmidt" refers to the marital community. In the context of the facts around the fire, it is undisputed that

Enforcement was assigned to investigate Schmidt's property for reported code violations. Lux testified that Schmidt did not have the appropriate permits for the home, nor to tear down and rebuild the home.

On November 28, 2010, Schmidt, a Seattle Fire Department battalion chief, was home alone. He testified that he was trying to figure out what could run on his home's generator, which was in the basement. He heard the generator bogging down, so he pulled the plug to take the load off the generator. He testified that he heard a whoosh and saw that gas cans he stored near the generator were on fire. He testified that he initially tried to put out the fire. But, the fire extinguisher wasn't where he remembered it being, and no water came out of the water hose because the water was off. He had previously shut the power off to the home. Schmidt then attempted to call 911, but the phone was dead. The fire ended up burning the entire home. Schmidt filed an insurance claim against his insurer, American Commerce Insurance Company (ACIC), which refused to cover his loss claim, asserting arson.

The jury found that Schmidt intentionally started the house fire. ACIC, in its motion for entry of judgment, asked the court to award it reasonable fees and costs. The trial court entered judgment in favor of ACIC, but granted ACIC $200.00 in attorney fees, instead of the requested $30,009.67.

---

Wendy Demeter was not present, and the use of "Schmidt" refers to Dennis Schmidt.

2

Schmidt moved for a mistrial, arguing that there was juror misconduct where, unbeknownst to Schmidt, a juror's daughter had attended the trial. Then, Schmidt moved for a new trial, alleging misconduct during ACIC's closing argument. The trial court denied Schmidt's motion for a mistrial and his motion for a new trial. Schmidt appeals. ACIC cross appeals.

DISCUSSION

Schmidt argues that the trial court erred in denying his motion for a new trial. Citing ACIC's misconduct and evidence errors, he contends that he was denied a fair trial. He argues that ACIC (1) argued to the jury in closing to make a verdict on matters outside of the evidence and without consideration to the law; (2) invited bias against Schmidt's out-of-state experts; (3) disclosed two new opinions from ACIC's experts during trial that were beyond the scope of discovery; (4) relied on hearsay statements in its closing; and (5) offered testimony it knew was untrue. Finally, Schmidt argues he was denied a fair trial where the court failed to exclude a juror's daughter from the courtroom.

On cross appeal, ACIC makes three arguments. First, that it is entitled to recover all of its reasonable attorney fees and costs based upon the arson finding. Second, that the trial court erred in granting Schmidt's summary judgment motion, finding that ACIC acted in bad faith as a matter of law regarding payment to the lienholder. And, third, that the trial court abused its discretion in excluding testimony from its witness, Dale Mann.

I.  Schmidt's Motion for a New Trial

Schmidt argues the trial court abused its discretion in denying his motion for a new trial. He argues that he was deprived of a fair trial due to the cumulative errors of ACIC's misconduct and evidence errors.

This court reviews a trial court's order denying a new trial for abuse of discretion. Aluminum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wn.2d 517, 537, 998 P.2d 856 (2000) ("Alcoa"). The criterion for testing abuse of discretion is whether " 'such a feeling of prejudice [has] been engendered or located in the minds of the jury as to prevent a litigant from having a fair trial.' " Id. (quoting Moore v. Smith, 89 Wn.2d 932, 942, 578 P.2d 26 (1978)).

A.  ACIC's Closing Argument

Schmidt first contends that it was misconduct when, in closing, ACIC argued that the jury could infer Schmidt's guilt from the lack of firefighters in the gallery. During its closing, ACIC stated,

> Let's talk about credibility and reputation. I expected at some point during the trial and today to look over there and see 20, 30, 40 men and women from the Seattle Fire Department coming to support him. Reputation, right?
>
> They knew him perhaps better than any witnesses you've heard. Where is [sic] the people he commanded who say, "Absolutely, he didn't do it"? I haven't seen them. Right?

Schmidt argues that, under Warren v. Hart, 71 Wn.2d 512, 429 P.2d 873 (1967), a new trial is required even though he did not object to ACIC's comments during closing.

Generally, when a party does not object to an opposing party's conduct at the time it occurs, or ask the trial court to declare a mistrial or instruct the jury to disregard counsel's statement, he waives his right to claim reversible error, entitling him to a new trial. See Warren, 71 Wn.2d at 517-18. The court in Warren recognized an exception to the rule, where the misconduct is so flagrant and prejudicial that no instruction to disregard it would have cured it. Id. at 518. There, it was flagrant misconduct where counsel argued to the jury that a police officer held a "trial on the spot" and that the jury should consider or be guided by what the officer did or did not do. Id. at 518-19. No instruction the trial court could have given could have cured the prejudicial effect of counsel's argument, and the appellant did not waive her right to assert that she was deprived of a fair trial by opposing counsel's argument to the jury. Id. at 519.

Schmidt argues that ACIC's comments in closing were "direct argument the jury should make a verdict on matters not in evidence and without consideration to law." The trial court denied Schmidt's motion for a new trial, stating, in part,

> . . . The argument, I didn't see people here sitting here in uniform or saying he -- is that proper? Perhaps not. It does ask people to guess about something that isn't evidence.
>
> . . . .
>
> I think there is a valid criticism that this is very late for the Court to be able to do something.

Collins v. Clark County Fire Dist. No. 5, 155 Wn. App. 48, 231 P.3d 1211 (2010) provides guidance. There, in closing the plaintiffs commented, "The amount that's being sought will not in any way reduce fire services, hurt the

department" and "[w]hat you need to do, please, is put a value on their suffering that other departments will look up and say, 'We can't do that.' " Id. at 94 (emphasis omitted). The court held that the trial court properly denied posttrial motions, because although the remarks were improper, they were not so prejudicial that a timely instruction could not have cured any prejudicial effect. Id. at 95.

The appellants argued that the comments urged the jurors to disregard the evidence before them and to award a higher verdict by injecting liability insurance coverage into the trial. See id. at 95. But, the appellants did not support their argument with briefing or legal authority, so the court declined to consider it further. Id. at 95-96. Further, the appellants argued that the plaintiffs improperly appealed to the jury's sympathy, passion, and prejudice, when counsel asked the jury to "send a message." Id. at 96. The court found that, because the appellants failed to object or request a curative instruction, they did not preserve this argument for appeal. Id. The court concluded that the appellants not only failed to show how the comments could reasonably have affected the jury's verdict, but that they also failed to demonstrate how the comments were so flagrant that no instruction could have cured the prejudicial effect. Id. at 97.

Here, as in Collins, there is no support for Schmidt's argument that, in closing, ACIC directed the jury to disregard the evidence. And, as in Collins, Schmidt fails to demonstrate how these comments were so flagrant that no instruction could have cured the prejudicial effect. ACIC's comments more closely

resemble those in <u>Collins</u> than in <u>Warren</u>. While ACIC's comments were improper, there was no objection, or request for a curative instruction. In light of Schmidt's failure to object and request a curative instruction, the trial court did not abuse its discretion in denying Schmidt's motion for a new trial based on ACIC's comments during its closing argument.

### B. Out-of-State Experts

Schmidt next contends that ACIC appealed to jury bias by repeatedly pointing out that Schmidt's experts were not from Washington. He argues that, under <u>Alcoa</u>, this was misconduct and that it calls into question the credibility of the entire lawsuit.

The party seeking a new trial based on counsel's misconduct must establish that (1) the conduct was misconduct, (2) the misconduct was prejudicial in the context of the entire record, (3) ordinarily the misconduct was properly objected to at trial, and (4) and the misconduct was not cured by the court's instructions. <u>See</u> <u>Alcoa</u>, 140 Wn.2d at 539-40.

On direct, Charles Miller testified that he was a licensed attorney in California, but that he had an understanding of claims handling practices in Washington. He also testified that he was not at trial to tell the jury what the law is, stating,

> Well, I'm not here in the capacity of someone who is informed about the details of Washington law like case law, for example. We always look at the statutory law and the regulatory law, as I just mentioned. But beyond that, what we're looking -- what I'm talking about are the insurance industry standards. What are the standards for claims handling in the industry itself?

At the beginning of ACIC's cross-examination of Miller, ACIC first asked, "How was your flight up from California," and, after Miller answered, ACIC asked, "You're up here from California. Right?" At this point, Schmidt objected, stating, "This is just a blatant appeal to prejudice and provincialism. We know he's from California." The court overruled the objection, and Stated, "He answered all those questions earlier. So let's move on." ACIC then reviewed Miller's credentials:

Q. You are an attorney down in California, but not in Washington. Right?

A. No. I'm not licensed in the State of Washington. That is correct.

Q. And you've never been. Correct?

A. Licensed in the State of Washington, no. I was a licensed adjuster, but not an attorney.

Q. And you're not longer a licensed adjuster in the State of Washington. Correct?

A. No. I am not.

Q. All right. You could be if you wanted to. Right?

A. No. Actually not.

Q. Right. You have to test for it. You could become a public adjuster in the State of Washington. Right?

A. I suppose I could, but I don't want to, so it would be irrelevant.

Q. Well, that would certainly help you understand Washington's obligations. Right?

A. No. I don't think so. I disagree with that.

Schmidt likens ACIC's tactic of pointing out that Schmidt's experts were from out-of-state[2] to misconduct in State v. Monday, 171 Wn.2d 667, 257 P.3d 551 (2011). In Monday, the State's improper conduct was injecting racial prejudice into the trial proceedings. Id. at 678. The court held that when a prosecutor flagrantly or apparently intentionally appeals to racial bias in a way that undermines the defendant's credibility or the presumption of innocence, [the court] will vacate the conviction unless it appears beyond a reasonable doubt that the misconduct did not affect the jury's verdict. Id. at 680. Schmidt also cites to State v. Dhaliwal, 150 Wn.2d 559, 576-77, 79 P.3d 432 (2003), that discusses prosecutorial comments that Dhaliwal argued were based on religious stereotypes. But, the "hometown prejudice" that Schmidt argues ACIC invoked does not resemble the racial bias the prosecutor invoked in Monday nor the religious stereotypes invoked in Dhaliwal. Those cases are not persuasive authority here.

ACIC repeatedly drawing attention to the bare fact that Miller resided in California to suggest bias could have served an inappropriate purpose. However, that is not the record. Instead ACIC established that Miller was neither licensed as an attorney nor an adjuster in Washington. It did so to rebut Miller's direct testimony that he was qualified to testify on practices in Washington. Even if we were to assume ACIC's tactic of repetition was misconduct, it was not so prejudicial in the context of the entire record that it warrants a new trial.

---

[2] ACIC asked another of Schmidt's experts, Nina Scotti, if she had come from California to testify, and if she was licensed as a fire investigator in Washington. Schmidt did not object.

9

C. Evidence Beyond Discovery

Schmidt next contends that it was prejudicial when ACIC disclosed two new opinions from its experts in the middle of trial. He argues that ACIC willfully violated the trial court's order in limine to not offer opinions beyond the scope of discovery. Schmidt contends that ACIC, in violation of the order in limine, prompted its experts, Dale Mann and Ron Liem, to say for the first time opinions the fire was caused by arson by Schmidt. And, Schmidt argues that the trial court abused its discretion when it overruled his objection.

The admission of evidence at trial is reviewed for an abuse of discretion. Davis v. Globe Mach. Mfg. Co., 102 Wn.2d 68, 76-77, 684 P.2d 692 (1984). A trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons. Id. at 77.

At trial, Schmit objected during Liem's direct examination:

> Q. All right. So based upon the two-day examination of the evidence, did you come to a conclusion regarding the electrical involvement of the fire?
>
> A. Yes. Concluded that there was no electrical involvement in the fire.
>
> Q. And so at that point, then, what were the potential causes of the fire?
>
> MR. BRIDGES: Objection, Your Honor. This is outside the scope of this witness, foundation.
>
> THE COURT: I guess I'll ask the witness, are you relying on your opinions or opinions of other people you've read?
>
> THE WITNESS: My own opinion.
>
> THE COURT: All right. You may state it.

It appears that, to the trial court, this was an objection to foundation and it ruled on that basis. The trial court overruled the objection after establishing that Liem was relying on his own opinions. Counsel did not clarify or make a record that it intended a different objection. Therefore, absent an objection to a violation of the discovery rules, consideration of a violation under Burnet v. Spokane Ambulance, 131 Wn.2d 484, 933 P.2d 1036 (1997), has not been preserved.

And, Schmidt's expert, Scotti, had already testified that there were only two possible explanations for the fire. On direct she testified, "The fire was an accident. . . . He did or we do have a potential ignition source, which is the parting arc." And, "I would have to prove the arson. It cannot be ruled out, but I would have to prove it." On cross, she acknowledged that in her deposition she stated, " 'Arson can't be eliminated, but neither can a departing arc.' " Thus, even if ACIC's expert's opinion as to the cause of the fire was beyond the scope of discovery, Schmidt's expert had opened the door to ACIC's expert's testimony. Allowing the testimony was not error.

Schmidt also asserts this error is based on Mann's testimony that in his opinion the fire was arson. Schmidt objected, but the objection was to redirect testimony. Mann had already testified on direct and on cross, without objection, that he agreed that the fire was arson, and ruled out other causes. Schmidt failed to timely object and preserve the claimed error during Mann's testimony.

The court did not abuse its discretion in overruling Schmidt's objection to Liem's testimony and that Schmidt did not preserve error during Mann's testimony.

D. Hearsay

Schmidt contends the trial court abused its discretion in permitting hearsay that ACIC then relied on its closing argument. Timothy Riddle, a fire investigator, was asked by ACIC's outside adjuster, Daniel Thenell to investigate the Schmidt fire. Riddle testified that a cause and origin investigator named Steve Gunsoli was initially retained to investigate the fire, until Riddle replaced him. On Schmidt's cross-examination of Riddle this exchange occurred:

> Q. Can you listen to my question? Are you aware that Mr. Gunsoli told Mr. Schmidt to watch his ass?
>
> A. That's a lie and I'll tell you why, because I just saw Steve Gunsoli and I had heard that.
>
> Q. No. No, no.
>
> A. And Gunsoli said –
>
> MS. KOEHLER: Your Honor, I'm going to ask him to –
>
> THE COURT: Overruled.
>
> THE WITNESS: You brought it up.
>
> MR. LEID: Let him answer the question, then.
>
> BY MS. HOEHLER:
>
> Q. You go ahead and you tell me, then.
>
> THE COURT: Pardon me. Go ahead and finish.
>
> THE WITNESS: Okay. You brought it up and I had heard this. And so I was at a fire out in the islands. And Steve Gunsoli was there. And I told him that this was getting ready to go to trial. And I said, "Do you have a subpoena yet for going to trial?" And he goes, "No. I didn't know anything about it."
>
> I said, "Well, you're an issue at [sic] this because, supposedly, you told Mr. Schmidt when you heard that I was assigned to this case

and Ronnie Liem was assigned to this case, that 'you better watch out', or 'you better watch your ass', or 'you better do something'," and he said, "That is a lie." And he said, "I want to go to court and tell my side of it."

Schmidt argues that ACIC relied on this hearsay in closing, citing to when ACIC stated,

> And then we heard the allegation that Gunsoli (phonetic) allegedly said, watch my ass. But you heard from Tim Riddle [that] Gunsoli absolutely positively denies making that statement. Right? And why didn't they call Gunsoli if they're going to say he said that, allegedly he did? Have him come in.

Schmidt invited the hearsay testimony when he asked Riddle whether he was aware of what Gunsoli allegedly told Schmidt. In argument, counsel may rely on evidence that is in the record. Beam v. Beam, 18 Wn. App. 444, 450, 569 P.2d 719 (1977). Under such circumstances, Schmidt cannot complain that ACIC relied in its closing on the testimony he had brought into the record.

E. Relying on False Testimony

Next, Schmidt argues that ACIC engaged in misconduct when it offered evidence it knew was untrue. He relies on two cases: Hayes v. Brown, 399 F.3d 972, 978 (9th Cir. 2005) and In re Pers. Restraint of Yates, 177 Wn.2d 1, 296 P.3d 872 (2013). In Hayes, the court noted that a criminal defendant is denied due process of law when a prosecutor either knowingly presents false evidence or fails to correct the record to reflect the true facts when unsolicited false evidence is introduced at trial. 399 F.3d at 984 And, in Yates, the court recognized that, in the context of closing arguments, misconduct includes making arguments that are unsupported by the admitted evidence. 177 Wn.2d at 58.

13

Here, Schmidt contends that at trial ACIC argued that Schmidt obstructed the investigation. He states, "ACIC and its attorney knew that was objectively false. Every person directly involved on behalf of ACIC admitted the Schmidts did not refuse access and could provide no explanation for the conduct of its outside adjuster Thenell claiming otherwise." Schmidt argues that ACIC offered the "knowingly false testimony" when Riddle claimed he was prevented by Schmidt from further excavation and testing of the basement. Schmidt's asserts that ACIC's argument in its closing was knowingly false.

But, Schmidt did not object to this portion of Riddle's testimony when it was given. Instead, Schmidt played pretrial depositions of ACIC's employees to contradict Riddle's claim that there was obstruction. The argument made for the first time on appeal that this testimony was knowingly false is based on those same depositions. This was not evidence discovered only after being presented at trial. Schmidt knew what the depositions said well before Riddle testified. Schmidt was not forced to wait until the end of trial to object to testimony it believed was knowingly false. The remedy for misconduct on the part of anyone during the progress of a trial is to call the attention of the presiding judge to the alleged misconduct and move by some proper procedure to have the matter corrected. Kasey v. Suburban Gas Heat of Kennewick, Inc., 60 Wn.2d 468, 477, 374 P.2d 549 (1962). It is not timely to await the result of the trial and then complain only in the case of an adverse verdict. Id. Failure to raise an issue before the trial court generally precludes a party from raising it on appeal. Wilcox v. Basehore, 187

Wn.2d 772, 788, 389 P.3d 531 (2017); RAP 2.5. While this rule insulates some errors from review, it encourages parties to make timely objections, gives the trial judge an opportunity to address an issue before it becomes an error on appeal, and promotes the important policies of economy and finality. Basehore, 187 Wn.2d at 788. Therefore, it was incumbent on Schmidt to object to the testimony if he believed it was knowingly false and make an offer of proof in order to exclude it.

Schmidt also read into the record the deposition in which Thenell stated that Schmidt had either not allowed or had delayed ACIC's investigation. Schmidt cannot complain that ACIC relied in its closing on the testimony he had brought into the record. See Beam, 18 Wn. App. at 450.

The challenge to the evidence should have been raised at trial, not for the first time on appeal. We do not reach the merits of the falsity claim.

F. Failure to Exclude Juror's Daughter

Finally, Schmidt argues that he was denied a fair trial because of the trial court's contact with a juror's daughter. He argues that the trial court was aware for a substantial time that a juror's daughter was present at trial, and that she was present when the jury was excluded. He argues that the presiding judge spoke with the juror's daughter on September 23. He argues the trial court abused its discretion by denying his motion for a mistrial, despite the juror misconduct.

The right of trial by jury means a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct. Robinson v. Safeway Stores, Inc., 113 Wn.2d 154, 159, 776 P.2d 676 (1989). The test to determine whether the verdict may be impeached and a new trial warranted is first whether the alleged information actually constituted misconduct and, second, if misconduct did occur whether it affected the verdict. Richards v. Overlake Hosp. Med. Ctr., 59 Wn. App. 266, 270, 796 P.2d 737 (1990). The injection of information by a juror to fellow jurors that is outside the recorded evidence of the trial and not subject to protections and limitations of open court proceedings, constitutes juror misconduct. Id. The trial court has discretion to decide whether juror misconduct occurred, whether it is prejudicial, and whether a mistrial is declared. Id. at 271. The decision of the trial court will be overturned on appeal only for abuse of discretion. Id.

In State v. Murphy, a juror's daughter attended the trial. 44 Wn. App. 290, 295, 721 P.2d 30 (1986). The juror relayed a conversation she had with her daughter during a trial recess about the guilt or innocence of the defendant. Id. at 295-96. The court held that communications by or with jurors constitute misconduct. Id. at 296. Once established, there is a presumption of prejudice. Id. But, this presumption is not conclusive and may be overcome if the trial court determines such misconduct was harmless to the defendant. Id. The court found support for the inference that there was no reasonable possibility of prejudice, because the conversation with the juror's daughter was not discussed during deliberation and the juror originally voted for acquittal. Id. at 297. And, it found

that the trial judge was in a better position to determine whether the misconduct was prejudicial, affirming its decision to deny the motion to vacate. Id.

After the jury returned its verdict for ACIC, Schmidt moved for a mistrial. At the hearing on his motion, Schmidt argued "there's no way they didn't talk about it," referring to the juror and her daughter discussing the trial. But, Schmidt does not point to any evidence that establishes that the juror's daughter communicated with the juror about the trial. In his brief, Schmidt admits that he does not have a declaration on whether the juror's daughter and the juror discussed the trial. And, Schmidt states, "But frankly, even if both the juror and her daughter were sworn and denied it, on a human level some things are unworthy of belief." In Murphy, the juror told the trial court that she discussed the defendant's innocence or guilt with her daughter. 44 Wn. App. at 295. Here, there is no such evidence of misconduct. And, in Murphy, the court found that even with that misconduct, the trial court did not abuse its discretion in denying the motion to vacate.

Here, the trial court stated,

> I don't have any reason to think that Juror No. 5 or anybody else had conversation, research, or anything else that was inappropriate, that in any way affected their deliberations, their understanding of the case, their view of counsel, their view of the parties. I certainly wouldn't trust my memory even if I knew that the daughter was here for jury instructions or some motion that we had when we were trying to decide whether So-And-So could come back and testify or some documents coming in, which happens during a trial.
>
> I'm not just talking about pretrial. If she were here, again, I have no evidence to show that any of the people who were present at trial, including the daughter, talked to Juror No. 5 or to anybody else about anything about this case, about any of the parties

involved, any of the attorneys, much less a factual or legal issue. For that reason, you know, I take the motion as respectful. I don't find it frivolous at all.

Schmidt asked the court to inquire further on the alleged juror misconduct:

> And we would ask you to call Juror No. 5 and her daughter back and to ask her that. I appreciate what you're saying about, well, we haven't given you anything, but I would also suggest you're kind of presenting mission impossible for us because I think I'm going to call her and say, "Hey, did you talk to your daughter?" Well, what do we expect her to say? She's going to tell me no. I need the black robe with her on the stand.
>
> That's our best chance to get at the truth and ultimately that's what our goal is, the truth. I'd ask you to do that. . . .

> . . . .

> THE COURT: Okay. I guess what I'm going to suggest -- and I don't know whether you want to take me -- and, again, the time almost couldn't be worse. It's that if you want to draft a letter -- and of course, again, have it reviewed by everybody -- and you want the Court to send that letter saying this is a question that we have, and see if anything comes from that, I mean, I hesitate to have a hearing where I again really don't have a reason to think. . . .

> . . . .

> MR. BRIDGES: I understand. You've been very gracious with your time. But I mean, what I'm hearing from you -- you're not going to give us an evidentiary hearing to put these two individuals under oath to ask them what the contact was.

> THE COURT: Well, on the basis of what I have so far, no.

Schmidt then declined the court's offer to send the jurors a letter. Instead, he asked for the juror's contact information and a protective order. The court denied Schmidt's motion for a mistrial, but in its order wrote that Schmidt could continue to inquire on the issue further.

18

Later, at a hearing on Schmidt's motion for reconsideration,[3] the court denied the motion, ruling, "I don't think we have enough here to grant a mistrial for either ex parte communication or juror misconduct."

Schmidt has asked us to impute improper communication between a trial spectator, the juror's daughter, and a juror. There is no evidence that any improper communication occurred, nor evidence of a reasonable possibility of prejudice. No case has held that the mere possibility of improper communication is sufficient, and we decline to adopt such a rule. The trial court did not abuse its discretion in denying the motion for a mistrial, nor the motion for reconsideration.

## II. Schmidt's Request for Fees

Schmidt requests attorney fees and costs as sanctions for ACIC's misconduct. ACIC's conduct was not improper, and we therefore deny Schmidt's request.

## III. ACIC's Request for Fees

On cross appeal, ACIC argues that it is entitled to recover all of its reasonable attorney fees and costs based upon the arson finding. It argues that under RCW 48.01.030 and RCW 48.30.230, it is entitled to reasonable attorney fees and costs incurred in the investigation and defense of the fraudulent claim. RCW 48.01.030 establishes that it is in the public interest that insureds as well as insurers act in good faith. RCW 48.30.230 prescribes criminal penalties for false

---

[3] This hearing was before a judge other than the one that presided over the trial.

or fraudulent claims. Neither statute expressly provides for the award of attorney fees in the course of civil litigation of coverage claims.

ACIC relies on State Farm Fire & Casualty Co. v. Huynh, 92 Wn. App. 454, 962 P.2d 854 (1998), to assert entitlement to attorney's fees under the Consumer Protection Act (CPA), RCW 19.86.020. There, this court held that the insurer, State Farm, had standing to sue a chiropractor under the CPA for filing a fraudulent insurance claim. Id. at 457-58, 461-62. Both the chiropractor and the insurer were engaged in the course of business. Id. at 458. Recovery against the chiropractor, a provider of services, for fraudulent claim is covered by the CPA. Huynh, 92 Wn. App. at 459; RCW 48.01.030. The Huynh case does not support a conclusion that an insured (Schmidt) and the provider (Huynh) are similarly situated under the CPA. Huynh does not provide a basis to award fees to ACIC.

ACIC also asserts entitlement to attorney fees and costs under RAP 14.2 and RAP 18.1(j) for prevailing at trial. And, it argues that this court should award it attorney fees under RAP 18.9, because Schmidt failed to properly cite to evidence in his brief. Finally, it argues that this court should award it fees and costs as a sanction to Schmidt under RAP 18.7.

Under RAP 14.2, the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise. RAP 18.1(j) applies when this court awards attorney fees and expenses to the party who prevails and the Supreme Court denies the other's party's petition for review. RAP 18.1(j) is not relevant here. RAP 18.9(a), in relevant part, states that this

court may order a party or counsel who fails to comply with these rules to pay compensatory damages to any other party who has been harmed by the failure to comply. Any errors in Schmidt's briefing do not rise to this level, nor was ACIC harmed by any failure by Schmidt to comply with the rules. Similarly, we do not award fees and costs as a sanction to Schmidt under RAP 18.7 for failing to sign and date any filings.

We deny ACIC's request for attorney fees and costs.

IV.    Bad Faith Summary Judgment Against ACIC

Next, ACIC argues on cross appeal that the trial court erred in granting Schmidt's summary judgment motion, finding that ACIC acted in bad faith as a matter of law regarding payment to the lienholder. ACIC contends that the trial court erred because ACIC acted in accordance with the court's previous order, where it held that Schmidt lacked standing to demand payment pursuant to the loss payable provision of the insurance contract.

This court reviews a trial court's summary judgment ruling de novo, engaging in the same inquiry as the trial court. Reliable Credit Ass'n v. Progressive Direct Ins. Co., 171 Wn. App. 630, 637, 287 P.3d 698 (2012). Summary judgment is proper when the pleadings, depositions, and admissions on file—together with the affidavits, if any—show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id. If the language in an insurance policy is unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists. Id. at 638.

The trial court found that ACIC failed to timely identify the availability of loss payable coverage arising under Schmidt's policy, violating WAC 284-30-350, constituting bad faith, and in violation of the CPA and IFCA (Insurance Fair Conduct Act), RCW 48.30.010. ACIC argues that Schmidt did not have standing to demand payment on behalf of the loss payee because the loss payable provision is for the benefit of the mortgagee. Further, it contends that there was a contract between ACIC and M & T Bank, and that Schmidt did not have standing to enforce the contract to which they were not a party. Citing Kim v. Allstate Insurance Co., it argues that material misrepresentations or fraud by the insured preclude findings of bad faith, IFCA, and CPA violations. 153 Wn. App. 339, 365, 223 P.3d 1180 (2009).

In Kim, the court reversed summary judgment for Kim, because it found that Kim made misrepresentations to Allstate regarding the extent and nature of her injuries as well as her ability to work. Id. Kim is distinguishable, because it does not address whether an individual can assert a third party benefit.

Here, when the trial court granted summary judgment regarding loss payable coverage in September 2015, the jury had not yet found that Schmidt intentionally set fire to the house. The court found that, as a matter of law, ACIC acted in bad faith in not timely identifying the availability of the loss payable coverage.

The trial court also found,

> ACIC did not provide an appropriate reply to plaintiffs' requests that it pay its Loss Payable coverage when it (a)

22

misrepresented the coverage was not intended to provide coverage if an insured engaged in intentional conduct, more specifically arson, (b) refused to take action to adjust the claim by asserting it only had a duty to do so if asked by a lien holder, (c) failed to identify any facts, policy it relied on, or an explanation applying the facts to the policy for its refusal to pay, and (d) not addressing the claim when it communicated its final coverage decision despite telling Schmidts it would do so. That conduct violates WAC 284-30-360(3) and (13) constituting bad faith, a violation of the CPA, and IFCA.

Finally, it found that ACIC failed to pay its loss payable coverage when that coverage liability became reasonably clear in violation of WAC 284-30-330(6) constituting bad faith, a violation of the CPA, and IFCA.

ACIC did not identify loss payable coverage it in its coverage letter. ACIC's first substantive response on the matter, a month and a half after Schmidt inquired, was that only the mortgagee can make this claim. This was more than seven months after the fire. The trial court found that ACIC had duties as a matter of law under WAC 284-30-330(6). In the earlier order denying Schmidt's motion for partial summary judgment, it ruled that Schmidt did not have standing to enforce payments of lienholder claims. But, that is a different issue from whether ACIC had failed to meet duties it owed as a matter of law. Because these issues are different, ACIC did not properly rely on the earlier ruling, so the trial court did not err in granting summary judgment regarding bad faith relative to the loss payable coverage.

V.  ACIC's Testimony Exclusion Claim

Finally on cross appeal, ACIC argues that the trial court abused its discretion in excluding testimony from its witness, Mann. It argues that Mann's testimony should not have been excluded because (1) it did not willfully withhold

information, (2), Schmidt was not prejudiced by the testing, and (3) it was an improper remedy. Because we affirm, we need not address ACIC's challenge to the exclusion of expert Mann's testimony on his supplemental report.

We affirm.

Appelwick, J.

WE CONCUR:

Mann, J.

Cox, J.